ATTORNEY FOR APPELLANT
Yvonne M. Spillers
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General

Robert J. Henke
Abigail R. Recker
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

FILED
Apr 26 2016, 2:09 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# In the
# Indiana Supreme Court

No. 02S04-1604-JT-207

IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP
OF N.G., L.C., & M.C. (MINOR CHILDREN), AND A.C. AND J.G. (THEIR PARENTS)

A.C. (MOTHER)                                    *Appellant (Respondent below),*

v.

THE INDIANA DEPARTMENT OF CHILD SERVICES,      *Appellee (Petitioner below).*

Appeal from the Allen Superior Court, No. 02D08-1403-JT-22;
02D08-1403-JT-23; 02D08-1403-JT-24
The Honorable Thomas P. Boyer, Magistrate
The Honorable Charles F. Pratt, Judge

On Transfer from the Indiana Court of Appeals, No. 02A04-1412-JT-605

**April 26, 2016**

**Dickson, Justice**.

This is an appeal by a mother whose parental rights were terminated as to three of her four children. We affirm the trial court.

A.C. is the mother of a son, N.G., born in 2003, and twin daughters, L.C. and M.C., born in 2006. At the time of the trial court's judgment in this case, N.G. was eleven years old, and L.C. and M.C. were eight years old. Our discussion collectively refers to N.G., L.C., and M.C. as "the children." The mother has an older child, G.C., born in 2002, who is not involved in this case. On March 17, 2014, the Indiana Department of Child Services (DCS) filed petitions seeking the involuntary termination of the parental relationship between the children and their parents, A.C. and J.G. These petitions followed extensive proceedings that had resulted in an adjudication in September 2011 that each of the children was a Child In Need Of Services (CHINS). Following numerous hearings in the subsequent termination proceedings, the trial court on December 2, 2014, issued its order adopting the magistrate's detailed findings of fact and conclusions of law and granted the requested involuntary termination of the parental relationships. The court's judgment applied to all three children. Only the mother appealed, and the Court of Appeals reversed the termination of her rights as to L.C. and M.C., but affirmed as to N.G. In re N.G., 45 N.E.3d 379, 396 (Ind. Ct. App. 2015). The DCS sought transfer, asking this Court to affirm the trial court. The mother does not challenge the decision of the Court of Appeals with respect to N.G. The Court of Appeals opinion supplies more extensive factual and procedural details.

The mother's appeal identifies three claims: (1) the trial court findings are not supported by the evidence; (2) the trial court judgment terminating the mother's parental rights and finding such action was in the best interest of the children is not supported by sufficient clear and convincing evidence; and (3) the trial court clearly erred when it failed to dismiss the petitions for termination of parental rights due to the concealment of recordings of counselling sessions in violation of the mother's due process rights.

The traditional right of parents to establish a home and raise their children is protected by the United States Constitution, but may be terminated when parents are unable or unwilling to meet their parental responsibilities. Bester v. Lake Cty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). In Indiana, when the DCS seeks to terminate the parent-child relationship of a child that has been adjudicated as a CHINS, its petition must allege:

2

(A)  that one (1) of the following is true:
    (i)  The child has been removed from the parent for at least six (6) months under a dispositional decree.
    (ii)  A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
    (iii)  The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
(B) that one (1) of the following is true:
    (i)  There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
    (ii)  There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
    (iii)  The child has, on two (2) separate occasions, been adjudicated a child in need of services;
(C) that termination is in the best interests of the child; and
(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2)(A)-(D).  If the trial court finds that each of these allegations "are true," it must "terminate the parent-child relationship." Ind. Code § 31-35-2-8(a).  The trial court must enter findings of fact that support its conclusions.  Ind. Code § 31-35-2-8(c).  "[A] finding in a proceeding to terminate parental rights must be based upon clear and convincing evidence." Ind. Code § 31-34-12-2.

In the appellate review of a termination of parental relationship, the following standard applies:

> We do not reweigh the evidence or determine the credibility of witnesses, but consider only the evidence that supports the judgment and the reasonable inferences to be drawn from the evidence. We confine our review to two steps: whether the evidence clearly and convincingly supports the findings, and then whether the findings clearly and convincingly support the judgment.

In re E.M., 4 N.E.3d 636, 642 (Ind. 2014) (quotations and citations omitted).  But we caution that the "clear and convincing" evaluation is to be applied judiciously.

> Reviewing whether the evidence "clearly and convincingly" supports the findings, or the findings "clearly and convincingly" support the judgment, is not a license to reweigh the evidence. Rather, it is akin to the "reasonable doubt" standard's function in criminal suffi-

ciency of the evidence appeals—in which we do not reweigh the evidence or assess the credibility of the witnesses, and consider only whether there is probative evidence from which a *reasonable jury could have* found the defendant guilty beyond a reasonable doubt. . . . Our review must give due regard to the trial court's opportunity to judge the credibility of the witnesses firsthand, and not set aside [its] findings or judgment unless clearly erroneous.

*Id*. (emphasis in original) (citations and quotations omitted).  In the appellate review of claims alleging a lack of proof by clear and convincing evidence, the reviewing court must thus determine whether there is probative evidence from which a reasonable fact-finder could have found the challenged matters proven by clear and convincing evidence.[1]

Here, the mother's first two appellate claims allege insufficient evidence.  Her first claim asserts that the evidence does not support the trial court's findings, and her second claim more specifically asserts that the evidence (not the findings) does not support the trial court's conclusions (a) that the parent-child relationship of the mother and the children should be terminated, or (b) that such termination was in the best interests of the children.   The mother's argument thus alleges the insufficiency of the evidence and does not specifically claim an insufficiency of the trial court's findings.  We construe her claims to allege (1) the evidence does not clearly and convincingly support the trial court's findings, and (2) the findings do not clearly and convincingly support the trial court's judgment that finds such termination to be in the best interests of the children and terminates the parental relationship.

The mother's first claim, asserting insufficient evidence to support the trial court's findings, challenges findings #36 and #37.  Findings #35 and #36 state that the mother's therapist, Marla McQuinn of the Bowen Center, testified that the mother's "attendance and participation in therapy has improved," yet McQuinn is "uncertain of whether [the mother] is benefiting from cognitive behavioral therapy. [The mother] still demonstrates closed thinking patterns and distortion in her perception of events." Appellant's App'x at 38. The mother argues that the evidence of the therapist's testimony does not support finding #36. Appellant's Br. at 4. Trial court finding #37 states that the mother "has been involved in cognitive behavioral therapy for over two (2) years with little [ ] or no benefit or improvement in her thinking patterns. As noted by Dr. [Da-

---

[1] *See* Civil Commitment of T.K. v. Dep't of Veterans Affairs, 27 N.E.3d 271, 273 (Ind. 2015) and Bud Wolf Chevrolet, Inc. v. Robertson, 519 N.E.2d 135, 137 (Ind. 1988).

vid] Lombard in his testimony, there should be some signs of improvement after three (3) to six (6) months of participation in cognitive behavioral therapy." Appellant's App'x at 38. The mother argues that because the testimony of the mother's "therapist was that she has benefitted, the evidence [does] not support [the trial court's] finding." Appellant's Br. at 4.

Viewed in a light most favorable to the judgment, however, the record supports the challenged trial court findings. McQuinn stated in her testimony that the mother's perception and the service provider's perceptions of what happened at visits were different. McQuinn also testified, "[N]o, I don't see any change or any progress" in the mother's supposed distorted thinking, and "I've questioned whether I'm beneficial, you know, if she's benefitting." Tr. at 80. McQuinn testified that she thought the DCS reports she created for the mother's monthly visits "questioned whether [the mother] was benefitting . . . ." Tr. at 76. Vickie Heath, the mother's therapist from February 2012 – August 2012, testified that the mother did not benefit from her services because of lack of participation. The mother's therapist from October 2012 – October 2013, Michael Wright of the Bowen Center, testified that the mother "would have to invest in [her therapy sessions] and apply them in order to benefit from them . . . ." Tr. at 51. Dr. Lombard testified: "[G]enerally, as I said, three (3) months for learning skills, [and] another three (3) months to apply them, and you generally achieve some significant symptom improvement. So if somebody requires that long of treatment without the symptoms significantly improving, then there's some concern there, yes." Tr. at 517. This evidence supports the trial court's findings of "little or no benefit" to the mother. Appellant's App'x at 38. We conclude that there is probative evidence from which a reasonable fact-finder could have found findings #36 and #37 proven by clear and convincing evidence, and thus such findings are supported by sufficient evidence.

We next address whether the findings were sufficient to support (a) the trial court's judgment terminating the parental relationship and (b) the trial court's determination that such termination was in the best interest of the children.

Terminating a parent-child relationship involving a CHINS requires the trial court to make various findings, including that the "termination is in the best interests of the child" and that *any one* of the following is true:

5

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services.

Ind. Code §§ 31-35-2-4(b)(2)(B),(C); 31-35-2-8. In the present case, the trial court made express findings, declaring each finding was "based on clear and convincing evidence," (a) that "termination of parental rights is in the best interests of [the children]" and (b) "that there is a reasonable probability that the conditions resulting in the removal of [the children] from [their parents] will not be remedied." Appellant's App'x at 45. The judgment was not predicated on factors (ii) or (iii) above—that continuation of the parent-child relationship poses a threat to the well-being of the children or that each of the children had been twice adjudicated a CHINS.

The children were each adjudicated as a CHINS and removed from the mother's home in 2011. The CHINS court found that the mother had multiple mental health diagnoses, including a bi-polar disorder; she had not been taking prescribed medication; she had a substantiated history of physical abuse toward N.G., who stated that his mother had hit him with a spiked belt and wooden board (the mother stated that it was her boyfriend that struck the child); there were concerns that the mother may be a hypochondriac; the mother submitted to a diagnostic test but was "'faking good' responses" during a previous CHINS proceeding; and the mother had been non-compliant with a prior DCS case in Huntington, Indiana in 2010. *See generally,* State's Exhibit 5, August 30, 2011 Order on Initial Hearing and Detention Hearing, at pages 4-5.

We therefore address whether the findings were sufficient to establish (a) that the termination was in the best interests of the children and (b) that there was a reasonable probability that the conditions that existed at the time of removal in 2011 will not be remedied. The mother attributes onset of the CHINS removal to her then-boyfriend "us[ing] inappropriate discipline and [herself being] neglectful in leaving her children with him." Appellant's Br. at 19. While the mother on appeal refers to several items of evidence from the protracted hearings that may arguably align with her claim of insufficiency, the trial court lists an abundance of findings that support the judgment. The following relevant findings were expressly listed by the trial court to support its conclusion that there is a "reasonable probability that the conditions resulting in the

removal of [the children] from [the parents] will not be remedied":

1. [The mother's] history of verbal abuse towards [the children].
2. [The mother's] history of physical abuse to [N.G.].
3. [The mother's] failure to protect [N.G.] from physical abuse by her boyfriend.
4. [The mother's] lack of compliance and progress in counseling.
5. [The mother's] history of not taking her medication as prescribed.
6. [The mother's] history of not taking [N.G.] to therapy on a consistent basis.
7. [The mother's] history of not following medical advice from [N.G.'s] psychiatrist.
8. [The mother's] inability to control and redirect the behavior of [the children] during visitation.
9. The negative behaviors exhibited by [the children] immediately following visitation with [the mother].
10. The emotional distress suffered by [the children] as a result of contact with [the mother].
11. The improvement in the behavior and mental health of [the children] after visitation with [the mother] was suspended.
12. The invalid test results from [the mother's] Child Abuse Potential Inventory in 2010 and 2012.
13. [The mother's] limited insight with respect to her mental health and behavioral issues.

Appellant's App'x at 45. We affirm the trial court's conclusion that "the findings clearly and convincingly support the judgment." In re E.M., 4 N.E.3d at 642.

The trial court listed each of the above findings again to support its conclusion that the termination of parental rights is in the best interest of the children. In addition, the court added the following:

19. CASA is of the opinion that termination of parental rights is in the best interest of [the children].
20. The Guardian Ad Litem is of the opinion that termination of parental rights [is in] the best interest of [the children].
21. It is the opinion of [N.G.'s] psychiatrist, Dr. Hani Ahmad, that termination of parental rights is in [N.G.'s] best interest.

Appellant's App'x at 46. We affirm the trial court's finding under (C) that the "termination of parental rights is in the best interest of [the children]." Appellant's App'x at 45; Ind. Code § 31-35-2-4(C).

We hold that a reasonable finder of fact could conclude based on clear and convincing evidence both (a) there is a reasonable probability that the conditions that resulted in the chil-

7

dren's removal or the reasons for placement outside the home of the parents will not be remedied, and (b) the termination is in the best interests of the children.

The mother's third appellate claim is that the trial court violated her due process rights by failing to dismiss the petition for termination of parental rights when evidence was presented that the DCS knew or should have known that the therapy sessions for L.C. and M.C. were videotaped, but failed to provide the videotapes when a subpoena was issued for them. Appellant's Br. at 9. We find that the mother has procedurally defaulted this claim on appeal by not making an objection in the trial court herself and by not joining the father's oral motion in the trial court. Furthermore, when the court asked how the parties were "doing with respect to the counseling videotapes," the mother's attorney answered, "[t]he matter is resolved, Your Honor." Tr. at 506. The mother's due process claim is thus waived. Furthermore, a party on appeal may waive a constitutional claim, including a claimed violation of due process rights, by raising it for the first time on appeal. McBride v. Monroe Cty. Office of Family and Children, 798 N.E.2d 185, 194 (Ind. Ct. App. 2003). We decline to consider the mother's claim of due process violation.[2]

We affirm the judgments of the trial court terminating the parental relationships of the parents, A.C. and J.G., with their children, N.G., L.C., and M.C.

Rush, C.J., and Rucker, David, and Massa, JJ., concur.

---

[2] Notwithstanding waiver, the record shows that the court ordered that the video tapes be produced for defendants' counsels' viewing, tr. at 604-05, and it was evident from counsel's cross examination of Lisa Burton, a family-centered therapist for S.C.A.N. in Fort Wayne, and Stephanie Taylor, the case manager at D.C.S., that defendants' counsel had viewed the video tapes. Tr. at 738, 818-19, 1051-52.