## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 20 2018, 9:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Karen Wrenbeck
Monroe County
Public Defender's Office
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re Termination of the Parent-Child Relationship of J.L.-E. (Minor Child)
and
B.T. (Mother),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

August 20, 2018

Court of Appeals Case No.
18A-JT-503

Appeal from the Monroe Circuit Court

The Honorable Stephen R. Galvin, Judge

Trial Court Cause No.
53C07-1711-JT-881

**Bradford, Judge.**

# Case Summary

[1] Appellant-Respondent B.T. ("Mother") appeals the juvenile court's order terminating her parental rights in J.L.-E. ("Child"). She raises the following restated issue on appeal: whether the Department of Child Services ("DCS") presented sufficient evidence to support the termination of her parental rights in Child. Specifically, Mother contends that the juvenile court erroneously found that termination was in Child's best interests. Mother also argues that part of one of the juvenile court's best-interest findings was clearly erroneous. Concluding that there was sufficient evidence to support the termination order, we affirm.

# Facts and Procedural History

[2] Mother is the biological parent[1] of Child, who was born on March 30, 2010, and S.B. ("Sibling").[2] DCS initially became involved with the family in July of 2016 because Mother failed to protect Sibling from a forty-two-year-old woman, A.R., who molested Sibling. Mother was unconcerned when Sibling told Mother about the molestation. A.R. was arrested for molesting Sibling, yet

---

[1] The rights of Child's father were also terminated, but he does not participate in this appeal.

[2] Sibling is Mother's other child. Sibling was also adjudicated as a Child in Need of Services ("CHINS'), and her permanency plan was another permanent living arrangement. Sibling is not the subject of these termination proceedings.

Mother allowed her to stay in the family's home and care for Child and Sibling after A.R. was released from jail.

[3] On August 22, 2016, DCS filed its petition alleging Child was a CHINS. On September 26, 2016, Child was removed from his home and placed with a relative. On September 29, 2016, the juvenile court authorized the filing of the CHINS petition, held an initial hearing, and ordered Child's continued placement outside of the home. On November 10, 2016, the juvenile court found Child to be a CHINS and made the following specific findings:

> 2. On May 1, 2016, [Sibling] was the victim of sexual molestation by [A.R.], a family friend. [A.R.] was arrested for Sexual Misconduct with a Minor. [Mother] was aware of the inappropriate relationship between [Sibling] and [A.R.] prior to [A.R.'s] arrest. [Mother] failed to protec[t] [Sibling] from her molester.
>
> 3. [Sibling] is currently on probation for truancy and has been placed outside her mother's home.
>
> 4. On May 24, 2016, [Child] was withdrawn from Templeton school by school personnel due to excessive absences. As of August 9, 2016, [Child] was not enrolled in school. As of September 26, 2016, [Child] had been absent 30 days of the school year.
>
> 5. On May 26, 2016, [Child] was observed to be playing with multiple knives in the home while his mother was present. [Child] suffers from severe episodes of anger and violence. He has been recommended for psychiatric assistance.
>
> 6. [Child] has observed acts of domestic violence in the home between [Mother] and her husband. He has also seen [Mother]

intentionally cut her arms. He states that he is afraid that she will bleed to death.

7. [Mother] admits to using marijuana. [Mother's husband] has admitted to taking [Child]'s medication.

8. [Mother] has a substantiated history of neglecting her children from 2004 and 2010…

* * *

10. In light of the serious and ongoing neglect of the children by their mother, the domestic violence in the mother's home, and the mother's substance abuse, the coercive intervention of the court is clearly necessary to protect the health and safety of the children.

[4] On December 5, 2016, the juvenile court entered its dispositional decree and ordered Mother to participate in services. Mother was ordered, in relevant part, to maintain contact with DCS; provide safe, suitable, and stable housing for Child; submit to random drug screens; participate in substance abuse assessments and recommendations including individual therapy; participate in home-based case management; and attend visitation. On March 19, 2017, the juvenile court held a review hearing and found that Mother had not participated in the ordered services. The juvenile court ordered that Child be placed in foster care.

[5] On June 12, 2017, the juvenile court held another review hearing and made similar findings about Mother's lack of participation in services with DCS. On July 17, 2017, the juvenile court held a hearing and suspended Mother's visits

with Child. Child's therapist, who had been observing the visits, recommended that the visits stop.

[6] In August of 2016, the juvenile court held a permanency hearing. The juvenile court again found that while DCS had provided services to Mother, Mother had not complied with the dispositional order. Mother had not appeared regularly for drug screens and had not participated in substance abuse treatment, individual therapy, or home-based case management services.

[7] On November 20, 2017, DCS filed a petition for involuntary termination of parental rights with respect to Mother and Child. A hearing was held on January 29, 2018. On February 8, 2018, the juvenile court issued an order terminating the parent-child relationship between Mother and Child. In doing so, the juvenile court made the following pertinent specific findings:

> 13. A Review Hearing was held on March 9, 2017. The Court found that the parents had not complied with the dispositional orders. [Mother] had not participated in drug screens. She had not obtained a substance abuse evaluation. She was not actively participating in home-based case management services. [Mother] had admitted herself to the St. Vincent's stress center in Indianapolis on November 13, 2016, for suicidal ideations. She was not regularly visiting with her children.
>
> 14. A further Review Hearing was held on June 12, 2017. Again, the Court found that neither parent was complying with the Dispositional Decree.
>
> 15. On July 20, 2017, [Mother] participated in a clinical interview and assessment with Midwest Psychological Center, Inc. She was diagnosed with Bipolar Affective Disorder, Current Episode Depressed; Generalized Anxiety Disorder;

Posttraumatic Stress Disorder; and Borderline Personality Disorder. A psychiatric evaluation to determine her need for medication was recommended. The psychologist also recommended individual mental health counseling services.

16. A Permanency Hearing was held on August 21, 2017. The Court noted that [Mother] had not been appearing for drug screens on a regular basis. She had not participated in substance abuse treatment, individual therapy, or home-based case management services. […] A permanency plan of termination of parental rights and adoption was approved.

17. [Mother] completed a further psychological assessment in September, 2017. The assessment was conducted by Centerstone. Centerstone's diagnosis was consistent with the prior diagnosis by Midwest Psychological Center, Inc. Substance abuse treatment, individual therapy, and instruction on life skills and parenting skills, were recommended. The evaluation contains the following observations:

As far as mental health [Mother] has a history of self-harm and suicide attempts. She does not stay consistently medicated... [Mother]'s children reported that they saw her cutting on multiple occasions, on one such occasion her son thought she was going to bleed to death and he was trying to stop the bleeding with toilet paper. [Mother] has a history of [domestic violence] with most of her past partners... She has a history of giving her paychecks to her current husband instead of using it towards her children.

For her parenting skills, I would say she has little to none.

18. [Mother] has no stable home. In January, 2017, she was living in Evansville, Indiana. She returned the [sic] Monroe County briefly in April and was living with friends. She was again living in Evansville in May, 2017. She moved to Bloomington in July and then on to Indianapolis. By October, she had returned to Evansville. In December, she was arrested

and subsequently transferred to Johnson County. Following her release, she returned to Bloomington, but moved to Indianapolis shortly thereafter.

19. Attempts to provide [Mother] with the skills she needs to maintain a stable home were unsuccessful. [Mother] did not regularly attend appointments with her home-based service providers. She appeared for only 10 of 40 scheduled appointments.

20. [Mother] has not participated in drug screens. She has a history of using marijuana and of taking her children's medications.

21. [Mother] did not actively engage in therapy.

22. [Mother] attended less than 50% of her visits with her children. From April 21 to July, 2017, [Mother] attended only 2 of 9 therapeutic visits. When she did appear for visits, she displayed extremely poor parenting skills. On one occasion, she engaged in a slap-fight with [Child]. When the visit supervisor attempted to redirect her, she said that [Child] needed to know how to fight to defend himself. She approved of [Sibling] teaching [Child] to fight. Ultimately, [Child]'s therapist recommended that visits should be suspended.

23. [DCS's] plan for [Child] is adoption. The [CASA] concurs. There is no reason to believe that [Child] is not adoptable.

Appellant's App. Vol. II pp. 9–12.

[8] The juvenile court also made the following conclusions of law about the reasons for removal, the continued placement outside of the home, and the threat to Child's well-being:

2. [Child] was removed from his mother's home on September 26, 2016. [Child]'s sister had been molested. [Mother] was aware

of the molestation and allowed the relationship to continue. [Child] had ceased going to school. [Child] was suffering from severe episodes of anger and violence. On May 26, 2016, he was observed to be playing with multiple knives in the home while his mother was present [Child] had observed his mother intentionally cutting herself. He had also observed domestic violence in his mother's home.

[Mother] admitted … to using marijuana. After [Child] and his sister were found to be Children in Need of Services, [Mother] took no meaningful steps to comply with the dispositional orders. She did not regularly participate in random drug screens, substance abuse treatment, individual therapy, or home-based case services. Her visits with her children were sporadic at best. She has little parenting skill. She continues to live a transient and unstable lifestyle. [Child] is not safe in her care.

Neither parent has demonstrated an ability or an inclination to provide [Child] with a safe and stable home. Clearly, there is no reasonable probability that the conditions which resulted in the removal of [Child] will be remedied. Further, [Mother] allowed her daughter [Sibling] to be molested in her home and allowed the molestation to continue even after the perpetrator had been arrested. [Mother] has displayed a profound lack of judgment in failing to protect her daughter. It is reasonable to conclude that continuation of the parent-child relationship poses a threat to the well-being of [Child].

# Discussion and Decision

This court has long had a highly deferential standard of review in cases concerning the termination of parental rights. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). When reviewing a termination of parental rights case, we will consider only the evidence and reasonable inferences that are most

favorable to the judgment. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied.* Thus, we will not reweigh the evidence or judge the credibility of the witnesses. *Id.* We will only set aside the court judgment terminating a parent-child relationship if it is clearly erroneous. *In re B.J.*, 879 N.E.2d 7, 14 (Ind. Ct. App. 2008).

[10] The traditional right of a parent to establish a home and raise her children is protected by the Fourteenth Amendment to the United States Constitution. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 145 (Ind. 2005). Furthermore, we acknowledge that the parent-child relationship is "one of the most valued relationships of our culture." *Id.* However, parental rights are not absolute and the law allows for the termination of such rights when a parent is unable or unwilling to meet her responsibilities as a parent. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans denied.* The purpose of terminating parental rights is to protect the child, not to punish the parent. *Id.* The juvenile court may terminate the parental rights if the child's emotional and physical development is threatened. *Id.* The juvenile court need not wait until the child has suffered from irreversible harm. *Id.*

[11] Before an involuntary termination of parental rights may occur, DCS is required to prove by clear and convincing evidence that:

> (A) one (1) of the following exists:
>
>> (i) the child has been removed from the parent for at least six (6) months under a dispositional decree;

> (ii) a court has entered a finding under IC 31–34–21–5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or
>
> (iii) the child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B) that one (1) of the following is true:
>
> > (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> >
> > (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> >
> > (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) termination is in the best interests of the child; and
>
> (D) there is a satisfactory plan for the care and treatment of the child.

[12] Ind. Code § 31-35-2-4(b)(2). DCS's burden of proof for establishing these allegations in a termination case is one of "clear and convincing evidence." *In re G.Y.*, 904 N.E.2d 1257, 1260–61 (Ind. 2009). Where the juvenile court's unchallenged findings clearly and convincingly support its ultimate decision to terminate parental rights, we find no error. *T.B. v. Ind. Dep't of Child Servs.*, 971 N.E.2d 104, 110 (Ind. Ct. App. 2012), *trans. denied*. As for challenged findings

and conclusions, we do not reweigh the evidence or judge credibility. *In re N.G.*, 51 N.E.3d 1167, 1170 (Ind. 2016).

[13] Mother argues that the juvenile court's order terminating her parental rights to Child was clearly erroneous. Specifically, Mother argues that the findings of fact do not support its conclusion that termination is in Child's best interests. Mother also argues that the factual finding within the best interests conclusion that "[Mother] has done nothing to ensure that she can meet [Child's] needs" is clearly erroneous. Appellant's App. Vol. II p. 13.

[14] When reviewing such claims, we are mindful of the fact that the juvenile court is required to look beyond the factors identified by DCS and consider the totality of the circumstances. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). In doing so, the court must subordinate the interests of the parent to those of the child involved. *Id*. A child's need for permanency is a "central consideration in determining the [child's] best interests." *K.T.K. v. Ind. Dep't of Child Servs., Dearborn Cty. Office*, 989 N.E.2d 1225, 1235 (Ind. 2013). Further, the Indiana Supreme Court has acknowledged that "children cannot wait indefinitely for their parents to work toward preservation or reunification—and courts 'need not wait until the child is irreversibly harmed such that the child's physical, mental and social development is permanently impaired before terminating the parent-child relationship.'" *In re E.M.*, 4 N.E.3d 636, 648 (Ind. 2014) (quoting *K.T.K.*, 989 N.E.2d at 1235).

[15] In addressing whether termination was in Child's best interests, we note that the Court Appointed Special Advocate Anne Owens and Family Case Manager Heidi Flynn testified that termination of Mother's parental rights was in Child's best interests. Such testimony is sufficient to support the juvenile court's conclusion in this regard. *See In re A.B.*, 887 N.E.2d 158, 170 (Ind. Ct. App. 2008) ("The recommendations of a child's caseworker and [guardian ad litem] that parental rights should be terminated support a finding that termination is in the child's best interests."). However, ample additional evidence further supports the juvenile court's conclusion. Due to Mother's very limited and sporadic participation in services, she has failed to complete any of them. Mother has also failed to address her severe mental health issues. According to Child's home-based therapist Amelia Calaway, Mother appeared proud when she said that Child had some of the same mental-health issues she had. Indeed, Child has threatened to commit suicide because that is what he has seen Mother do.

[16] Calaway testified that Mother had more than twenty phone numbers and more than ten addresses throughout the course of the CHINS proceedings. The record shows that Mother has also had multiple partners throughout the proceeding despite the fact that she was in a relationship with a man name Shawn whom she eventually married. According to Calaway "[t]he overall problem is instability in all areas such as mental health, housing, employment, relationships and parenting." Ex. Vol. III p. 84.

[17]	As for Mother's claim that it was clearly erroneous to find she has "done nothing to ensure that she can meet [Child's] needs," there is ample evidence that supports this finding. Appellant's App. Vol. II p. 13. The record shows that Mother did not participate in services. There is also evidence that she did not take steps to address her severe mental health issues or help Child address his. In support of her claim, Mother points to the fact that she made an effort to attend some services and brought food to visits with Child as evidence that she was making an effort. Mother's argument is merely a request for us to reweigh the evidence, which this court will not do. *In re N.G.*, 51 N.E.3d at 1170.

[18]	The totality of the evidence demonstrates that the juvenile court's conclusion that termination of Mother's parental rights is in Child's best interests is not clearly erroneous. *See, e.g.*, *In re T.F.*, 743 N.E.2d 776 (Ind. Ct. App. 2001) (holding that the record contained sufficient evidence that termination of the parents' rights was in the best interests of the children).

[19]	The judgment of the juvenile court is affirmed.

	Bailey, J., and Mathias, J., concur.