## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 19 2019, 10:04 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anna Onaitis Holden
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Involuntary Termination of the Parent-Child Relationship of: L.F. (Minor Child), <br><br> and <br><br> A.M.-J. (Mother), <br> *Appellant-Respondent,* <br><br>      v. | February 19, 2019 <br><br> Court of Appeals Case No. 18A-JT-1900 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Larry Bradley, Magistrate <br><br> Trial Court Cause No. 49D09-1709-JT-748 |

The Indiana Department of
Child Services,
*Appellee-Plaintiff,*

and

Child Advocates, Inc.,
*Guardian ad Litem.*

**Tavitas, Judge.**

# Case Summary

A.M.-J. ("Mother") appeals the termination of her parental rights to her child, L.F. (the "Child"). We affirm.

# Issue

Mother raises one issue, which we restate as whether Mother's due process rights were violated by the failure of the Marion County Department of Child Services ("DCS") to offer her services while she was incarcerated.

# Facts

The Child was born in June 2013 to Mother and M.F. ("Father"). At some point, Father was awarded custody of the Child, and Mother was granted supervised visitation. Mother, however, has not seen the Child since the Child was approximately eighteen months old. In February 2016, Mother was charged with arson, a Level 4 felony, in Grant County.

[4]     On March 8, 2016, DCS filed a petition alleging that the Child was a child in need of services ("CHINS") because the Child had several unexplained bruises and Father refused to meet with the family case manager. Father entered an admission to the petition, and Mother waived a fact-finding hearing. At that time, both Mother and Father were incarcerated. The trial court found that the Child was a CHINS, and the Child was placed with relatives. In the dispositional order, the trial court ordered both Mother and Father to contact DCS after being released from incarceration.

[5]     In March 2017, Mother pleaded guilty to arson, a Level 4 felony, and she was sentenced to six years in the Department of Correction. In September 2017, DCS filed a petition to terminate Mother's and Father's parental rights. Father signed a consent to the Child's adoption, and Mother proceeded to an evidentiary hearing.[1] At the time of the hearing in June 2018, Mother testified that she was scheduled to be released from prison in January 2021. Mother testified that she was "working on getting into the purposeful program"[2] and getting years of time cut from her sentence. Tr. Vol. II p. 25. Although there were other programs in the prison that could shorten Mother's sentence, she was not eligible for the programs at that time due to her multiple behavioral

---

[1] This appeal concerns only Mother's parental rights to the Child.

[2] We presume Mother is referring to the Purposeful Incarceration program, which allows a trial court to consider a sentence modification if the offender successfully completes certain substance abuse treatment programs. *See* https://www.in.gov/idoc/2798.htm (last visited February 8, 2019). According to Mother, the program is "more therapeutic and religious based" and takes six to twelve months to complete. Tr. Vol. II p. 28.

incidents. DCS family case manager, Alice Wyatt, testified that termination of Mother's parental rights was in the Child's best interest because there was no guarantee when Mother would be released from prison and the Child needed permanency and stability. The trial court entered findings of fact and conclusions of law terminating Mother's parental rights. Mother now appeals.

# Analysis

[6] Mother challenges the termination of her parental relationship with the Child. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re K.T.K. v. Indiana Dept. of Child Services, Dearborn County Office,* 989 N.E.2d 1225, 1230 (Ind. 2013). "[A] parent's interest in the upbringing of [his or her] child is 'perhaps the oldest of the fundamental liberty interests recognized by th[e] [c]ourt[s].'" *Id.* (quoting *Troxel v. Granville,* 530 U.S. 57, 65, 120 S. Ct. 2054 (2000)). We recognize, of course, that parental interests are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate parental rights. *Id.* Thus, "'[p]arental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities by failing to provide for the child's immediate and long-term needs.'" *K.T.K.,* 989 N.E.2d at 1230 (quoting *In re D.D.,* 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*).

[7] Indiana Code Section 31-35-2-8(a) provides that "if the court finds that the allegations in a petition described in [Indiana Code Section 31-35-2-4] are true,

the court shall terminate the parent-child relationship." DCS must establish these allegations by clear and convincing evidence. *In re V.A.*, 51 N.E.3d 1140, 1144 (Ind. 2016). Mother, however, does not challenge the trial court's findings on any of the required factors in the termination of her parental rights. Rather, Mother's only argument is that her due process rights were violated because DCS did not provide services to her during the CHINS proceeding while she was incarcerated.

[8] "[A] party on appeal may waive a constitutional claim, including a claimed violation of due process rights, by raising it for the first time on appeal." *In re N.G.*, 51 N.E.3d 1167, 1173 (Ind. 2016). DCS is generally required to make reasonable efforts to preserve and reunify families during CHINS proceedings. *In re H.L.*, 915 N.E.2d 145, 148 (Ind. Ct. App. 2009); Ind. Code § 31-34-21-5.5. We also note that Indiana Code Section 31-35-2-4.5 allows the filing of a motion to dismiss a petition for termination of parental rights under certain circumstances if DCS has failed to provide appropriate family services. There is no indication in the record that Mother challenged the lack of services during the CHINS proceedings, filed a motion to dismiss the termination proceedings, or made a due process argument to the trial court. Mother's argument is, thus, waived.

[9] Waiver notwithstanding, we will address her claim. "Due process protections bar 'state action that deprives a person of life, liberty, or property without a fair proceeding.'" *In re G.P.*, 4 N.E.3d 1158, 1165 (Ind. 2014) (quoting *In re C.G., Z.G. v. Marion Cnty. Dep't of Child Servs.*, 954 N.E.2d 910, 916 (Ind. 2011)). "It is

unequivocal that the termination of a parent-child relationship by the State constitutes the deprivation of 'an important interest warranting deference and protection,' and therefore '[w]hen the State seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of due process.'" *Id.* (quoting *C.G.*, 954 N.E.2d at 916-17).

[10] The question here is whether DCS's failure to provide Mother with services during her incarceration was a violation of due process. Our court has repeatedly rejected similar arguments. We have held that "the CHINS provision is not a requisite element of our parental rights termination statute, and a failure to provide services does not serve as a basis on which to directly attack a termination order as contrary to law." *H.L.*, 915 N.E.2d at 148 n.3; *see also In re E.E.*, 736 N.E.2d 791, 796 (Ind. Ct. App. 2000) ("[T]he provision of family services is not a requisite element of our parental rights termination statute, and thus, even a complete failure to provide services would not serve to negate a necessary element of the termination statute and require reversal.").

[11] The absence of services here was due to Mother's incarceration. Mother was incarcerated for the duration of the CHINS and termination proceedings, and she did not expect to be released until 2021. Mother testified that, although the prison had relevant programs for her, she was not eligible for the programs at that time due to her multiple behavioral incidents. Alice Wyatt, DCS family case manager, sent letters to Mother in jail, but Wyatt did not receive any response or request for services. At one point, Mother discussed with the family case manager a program that allowed Mother to read a book to the Child

and send the recording to the Child; Mother, however, did not follow through. Another DCS family case manager, Divina Castanda Thrasher, testified that she had also sent a letter to Mother. Mother did not request services from Thrasher and did not request parenting time.

[12] Mother had no contact with the Child during the CHINS or termination proceedings. The absence of services was directly due to Mother's incarceration, and Mother's due process rights were not violated. *See, e.g., H.L.*, 915 N.E.2d at 148 (holding that the absence of services was due to Father's incarceration and Father did not point to any evidence that he specifically requested visitation or other services); *E.E.*, 736 N.E.2d at 796 (holding that the parent could "not directly attack the termination order on the grounds that she was denied appropriate family services because of her mental disability").

[13] Despite our holdings in *H.L.* and *E.E.*, Mother argues that we should address the issue under the three-factor analysis used in *G.P.*, 4 N.E.3d at 1165, and *In re I.P.*, 5 N.E.3d 750, 751-52 (Ind. 2014). Even if we apply that analysis, Mother's argument fails. The process due in a termination case turns on the balancing of three factors: (1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing governmental interest supporting use of the challenged procedure. *I.P.*, 5 N.E.3d at 751-52; *G.P.*, 4 N.E.3d at 1165. "In termination cases, both the private interests of the parents and the countervailing governmental interests that are affected by the proceeding are substantial." *C.T. v. Marion Cty. Dep't of Child Servs.*, 896 N.E.2d 571, 587 (Ind. Ct. App. 2008),

*trans. denied*. Thus, we consider the risk of error created by DCS' failure to provide services to Mother.

[14] Mother argues there is a "tremendous risk of error when DCS fails to make reasonable efforts to reunify families." Appellant's Br. p. 15. DCS argues that the risk of error was minimal given: (1) Mother's incarceration; (2) Mother's failure to have a relationship with the Child even before the CHINS proceedings; (3) Mother's failure to request parenting time or services; (4) Mother's failure to complete any programs while incarcerated; and (5) Mother's failure to assert what services should have been provided or how the lack of services impacted her ability to remedy the situation.

[15] We agree with DCS. Even before the CHINS proceeding was initiated, Mother had not seen the Child for over one year. Mother's incarceration began even before the CHINS proceeding, and she was incarcerated during the entire CHINS and termination proceedings. It is unclear what services could have been offered to Mother by DCS during her incarceration. While incarcerated, she was unable to participate in programs offered by the prison due to her repeated behavioral issues. Under these circumstances, the risk of error was minimal. Weighing the factors, we find no due process violation.

## Conclusion

[16] Mother failed to demonstrate that her due process rights were violated. The trial court's termination of Mother's parental rights to the Child is not clearly erroneous. We affirm.

Affirmed.

Baker, J., and May, J., concur.