## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 20 2019, 8:14 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Harold E. Amstutz
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Vo Sherman
Certified Legal Intern

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Termination of the Parent-Child Relationship of:

H.M. (Minor Child),

and

A.M. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

August 20, 2019

Court of Appeals Case No.
19A-JT-752

Appeal from the Tippecanoe Superior Court

The Honorable Bradley K. Mohler, Special Judge

Trial Court Cause No.
79D03-1809-JT-125

**Baker, Judge.**

A.M. (Father) appeals the juvenile court's order terminating his parent-child relationship with H.M. (Child), arguing that the evidence is insufficient to support the order and that the juvenile court erred when it improperly admitted written reports as hearsay evidence. Finding that the evidence is sufficient and that the juvenile court committed, at most, only harmless error, we affirm.

# Facts

Child was born to B.L. (Mother)[1] and Father on February 2, 2016. On November 1, 2016, the Department of Child Services (DCS) became involved with the family and removed Child from the home due to Mother's untreated mental health problems, substance abuse issues, and a failed attempt at suicide. DCS did not place Child with Father because Father could not provide documentation proving paternity of the Child. Even after Father established paternity, Child remained in foster care.

On November 2, 2016, DCS filed a petition alleging that Child was a Child in Need of Services (CHINS). The juvenile court adjudicated Child to be a CHINS on December 29, 2016, and entered a dispositional decree on January 20, 2017. Under the terms of that dispositional decree, Father was required to keep in contact with the Family Case Manager (FCM), maintain housing, not

---

[1] Child's mother is not part of this appeal.

possess or consume alcohol or illegal substances, submit to random drug screens, obtain employment, and follow all recommendations from assessments. By February 27, 2018, the juvenile court found that Father had not met the objectives of the dispositional decree, noting that Father had failed to comply with all required services, attend any visitations with Child or make any effort to see Child, or produce clean drug screens. Moreover, Father had been arrested for possession and use of methamphetamine. Following that hearing, "[t]he Court did not authorize parenting time for the Father, noting that the Father did not wish to proceed with reunification." Appellant's App. Vol. II p. 20-21. Father never participated with services during the CHINS case and has not seen or had contact with Child since December 2016.

[4]     On October 18, 2017, Father pleaded guilty to Level 5 felony dealing in methamphetamine, Level 5 felony dealing in a narcotic drug, and Level 6 felony operating a vehicle as an habitual traffic violator. At the time of the termination hearing, Father believed that his earliest possible release date from the Department of Correction (DOC) was April 19, 2019. Father "completed beneficial programs while incarcerated, including Recovery While Incarcerated, Mothers Against Meth, Inside Out Dads, and vocational programs." *Id.* at 22. Additionally, Father had a pending theft charge against him, with an initial hearing set for April 22, 2019.

[5]     DCS filed a petition for termination of parental rights on September 4, 2018. At the January 31, 2019, fact-finding hearing, Father testified that he had completed various programs while incarcerated and that he had hoped to

continue treatment services once released from the DOC. He admitted that he had refused to participated in DCS services because he was "mad," *id.* at 23, that he was hostile to DCS and its efforts for rehabilitation and reunification, that he had consistently refused to submit to drug screens, that he "wasn't gonna jump through all [of DCS's] hoops," tr. vol. II p. 160, and that he had not seen Child since Christmas 2016. It was also revealed that Father had no prospective employment, housing, or treatment options after his release from the DOC.

[6] FCM Sally Messmer testified at the termination hearing that termination of parental rights was in Child's best interest. Additionally, Court-Appointed Special Advocate (CASA) Hilary Laughner, who had not worked on Child's case from the beginning, brought written reports from the original CASA: Dottie Rausch. CASA Laughner then testified that based on her personal observations, Child was doing well in his current placement with his half-sibling; Child had been removed and separated from both parents for approximately twenty-seven months; Child required stability and permanency; DCS had a permanency plan for Child's current foster parents to adopt him; and termination of parental rights was in Child's best interests. CASA Laughner also submitted CASA Rausch's original reports, which the juvenile court admitted into evidence. On March 31, 2019, the juvenile court entered an order granting the termination petition. Father now appeals.

# Discussion and Decision

## I. Standard of Review

When reviewing an order on the termination of a parental relationship:

> We do not reweigh the evidence or determine the credibility of witnesses, but consider only the evidence that supports the judgment and the reasonable inferences to be drawn from the evidence. We confine our review to two steps: whether the evidence clearly and convincingly supports the findings, and then whether the findings clearly and convincingly support the judgment. Reviewing whether the evidence "clearly and convincingly" supports the findings, or the findings "clearly and convincingly" support the judgment, is not a license to reweigh the evidence.

*In re E.M.*, 4 N.E.3d 636, 642 (Ind. 2014) (internal citations omitted) (some internal quotations omitted). We must give "due regard" to the trial court's ability to judge witness credibility firsthand, and we will not set aside its findings or judgment unless clearly erroneous. *Id.*

Pursuant to Indiana Code section 31-35-2-4(b)(2), DCS must prove the following in order to terminate the parental rights for a CHINS:

> (A) that one (1) of the following is true:
>
>> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>>
>> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

DCS must prove these allegations by clear and convincing evidence. *In re N.G.*, 51 N.E.3d 1167, 1170 (Ind. 2016).

# II. Sufficiency

First, Father argues that the evidence does not establish that termination of his parental rights was in Child's best interests. Father contends that termination was ordered solely based on his incarceration, which is improper.

[10]    Father is correct that the fact that a parent is incarcerated does not, alone, prove by clear and convincing evidence that termination of parental rights is appropriate. *K.E. v. Ind. Dep't of Child Servs.*, 39 N.E.3d 641, 648 (Ind. 2015). Rather, DCS must proffer additional evidence in tandem with a parent's incarceration to establish that placement with the parent is not in the child's best interest. *Id.*

[11]    Here, the record is replete with evidence aside from Father's incarceration that termination is in Child's best interests. At the beginning of the CHINS case, Father had yet to establish paternity of Child. Even after proving paternity, Father did not comply with any part of the dispositional decree, failing to attend rehabilitative services, to participate in court-ordered programs, to attend any visitations with Child, and to produce clean drug screens. Additionally, Father was charged with and eventually pleaded guilty to felony drug offenses, with a theft charge pending against him. As of the termination hearing, Father had not seen or had any contact with Child for over two years.

[12]    And while Father had made some progress by completing various programs in the DOC, Father admitted that before his incarceration, he had refused to submit to drug screens, been belligerent and uncooperative with DCS employees, and had refused to " jump through all [of DCS's] hoops[,]" in order to see Child. Tr. Vol. II p. 160. *See, e.g., Lang v. Starke Cty. Office of Family and Children*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007) (holding that the juvenile court may "consider the parent's response to the services offered through . . . DCS[]" in CHINS proceedings). The FCM and current CASA both testified

that Child is currently in a safe, comfortable, and healthy environment with his foster parents and that Child needs this stability in order to grow and prosper. In their opinion, termination of parental rights was in the Child's best interests, and Father proffered no evidence to the contrary.

[13] In sum, the juvenile court did not err by determining that there is clear and convincing evidence apart from Father's incarceration that termination is in Child's best interests.

# III. Admission of Evidence

[14] Next, Father argues that the juvenile court erred when it admitted evidence of the original CASA's written reports and conclusions. Specifically, Father argues that this evidence constituted inadmissible hearsay. The admission of evidence is left to the trial court's sound discretion, and we will not disturb that decision unless it is against the logic and effect of the facts and circumstances before it. *In re Involuntary Termination of Parent Child Relationship of A.H.*, 832 N.E.2d 563, 567 (Ind. Ct. App. 2005).

[15] It should be noted that Father failed to object to the introduction of the original CASA's written reports, thereby waiving the issue for appeal. *See In re Des.B.*, 2 N.E.3d 828, 835 (Ind. Ct. App. 2014). Though Father failed to object, we will nevertheless address his argument because Mother did raise a hearsay objection and, as a result, the juvenile court was able to consider and rule on the issue.

A statement is hearsay if it "is not made by the declarant while testifying at the trial or hearing[] and is offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). Hearsay statements are inadmissible in a court of law unless an exception, rule, or other law applies. Ind. Evidence Rule 802. Here, DCS proffered the written reports and conclusions of CASA Dottie Rausch, an unavailable declarant, to prove the truth of the matter asserted— namely, that termination of Father's parental rights is warranted and necessary in this situation. This presentation of evidence plainly violates the prohibition against hearsay evidence. Thus, the juvenile court erred when it admitted the Rausch reports.

However, the juvenile court's error was, at most, harmless. "An error is harmless if it does not affect the substantial rights of the parties." *In re C.G.*, 933 N.E.2d 494, 508 (Ind. Ct. App. 2010). Also, the trial court commits harmless error "if the erroneously admitted evidence was cumulative of other evidence appropriately admitted." *In re S.W.*, 920 N.E.2d 783, 788 (Ind. Ct. App. 2010). Rausch's written reports represented just one among many pieces of evidence proffered by DCS during the fact-finding hearing. The new CASA, Hilary Laughner, provided her own recommendations together with the FCM. Additionally, there was well-documented proof that Father had been non-compliant with most, if not all, DCS-related services. Furthermore, Father had been incarcerated due to drug convictions, had neglected to secure stable housing and employment upon his release from the DOC, and most importantly, had failed to create any sort of meaningful relationship with Child

from the time of his birth. Though Rausch's written reports were erroneously admitted into evidence, we find that the error was harmless when looking at the wealth of evidence that was properly admitted.

[18] The judgment of the juvenile court is affirmed.

Kirsch, J., and Crone, J., concur.