## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 26 2020, 11:26 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Renee M. Ortega
Lake County Juvenile
Public Defender's Office
Crown Point, Indiana

ATTORNEY FOR APPELLEE

Natalie F. Weiss
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re the Termination of the Parent-Child Relationship of:

D.L.S. and N.S. (Minor Children),

and

G.P. (Mother),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

May 26, 2020

Court of Appeals Case No. 19A-JT-2877

Appeal from the Lake Superior Court

The Honorable Thomas P. Stefaniak, Jr., Judge

Trial Court Cause Nos.
45D06-1907-JT-178
45D06-1907-JT-179

**Baker, Judge.**

[1] G.P. (Mother) appeals the juvenile court's order terminating her parent-child relationship with D.L.S. and N.S. (Minor Children), arguing that the evidence is insufficient to support the order. Finding the evidence sufficient, we affirm.

# Facts

[2] On May 4, 2018, the Department of Child Services (DCS) was notified by police that Minor Children had been living with D.S. (Father)[1] and Mother in a drug-ridden home. The day before, on May 3, 2018, officers arrived at the home and discovered baggies filled with white powder. According to the officers, Father appeared to be under the influence of drugs and readily admitted that Minor Children were not safe in his care. Furthermore, the children were filthy, and Mother was not present. It was later determined that Mother had been admitted to an inpatient drug treatment facility.

[3] DCS also found out that Mother and Father had been using marijuana and heroin on a daily basis in front of Minor Children. Additionally, at some point in time, Mother's brother had fired gunshots at the home while Minor Children were inside. Therefore, on May 4, 2018, DCS filed a petition, which was later amended on May 7, 2018, alleging Minor Children to be Children in Need of Services (CHINS).

---

[1] Father is not a party to this appeal.

[4]     The juvenile court continued the initial May 7, 2018, detention hearing to May 24, 2018, at which time Mother admitted to the allegations contained in the amended CHINS petition and confessed that she had a substance abuse problem. The juvenile court adjudicated Minor Children to be CHINS that same day and entered a dispositional decree. Per that dispositional decree, Mother was required to (1) complete her current inpatient treatment program and follow all recommendations; (2) submit to random drug screens and maintain sobriety; (3) receive individual therapy sessions to address underlying trauma and substance abuse issues; (4) obtain adequate housing and employment; (5) complete a parenting assessment and follow all recommendations; and (6) attend supervised visitations with Minor Children. *See generally* Appellant's App. Vol. II p. 16. Minor Children were then placed with a foster family.

[5]     Initially, Mother showed success with her services. She completed the substance abuse assessment and a separate substance abuse program in May 2018 and January 2019, respectively. However, Mother started using drugs again shortly thereafter. On multiple occasions throughout 2019, Mother tested positive for one or more of the following substances: cocaine, fentanyl, marijuana, opiates, and tramadol. Mother submitted to only a few drug screens, even though she was required to complete them twice a week. And in fact, Mother admitted to using heroin just days before the termination hearing.

[6]     Different Family Case Managers worked with Mother and attempted to help her find adequate housing and employment. However, each time, Mother failed

to follow through and comply with recommended services. Mother has consistently been unemployed and unable to improve her lifestyle. Furthermore, there is a long history of domestic violence issues between Father and Mother that were evident while Minor Children were living in the home. According to DCS, neither parent has worked to resolve those issues or to assist in helping Minor Children deal with their ongoing trauma. And to compound the problem, Mother and Father could not continue with joint supervised visitations with Minor Children because of their behavior and frequent outbursts towards each other. On May 15, 2019, the permanency plan was changed from reunification to adoption by the foster family.

[7]     On July 12, 2019, DCS filed a petition for involuntary termination of the parent-child relationship between Mother and Minor Children. The juvenile court held a termination hearing on November 5, 2019,[2] at which Permanency Worker Klaudia Rogers testified that termination of Mother's parental rights was in the best interests of Minor Children "[b]ecause the foster parents have been able to identify medical needs that the children have had," and "the foster parents have been able to provide consistency, time and patience in meeting all of their needs." Tr. Vol. II p. 35. The juvenile court then took the matter under advisement.

---

[2] The record does not indicate why there was such a lengthy delay between the filing of the petition and the eventual termination hearing.

On November 14, 2019, the juvenile court issued an order terminating the parent-child relationship between Mother and Minor Children. Mother now appeals.

# Discussion and Decision

# I. Standard of Review

When reviewing an order on the termination of a parental relationship:

> We do not reweigh the evidence or determine the credibility of witnesses, but consider only the evidence that supports the judgment and the reasonable inferences to be drawn from the evidence. We confine our review to two steps: whether the evidence clearly and convincingly supports the findings, and then whether the findings clearly and convincingly support the judgment.
>
> Reviewing whether the evidence "clearly and convincingly" supports the findings, or the findings "clearly and convincingly" support the judgment, is not a license to reweigh the evidence.

*In re E.M.*, 4 N.E.3d 636, 642 (Ind. 2014) (internal citations omitted) (some internal quotations omitted). We must give "due regard" to the juvenile court's ability to judge witness credibility firsthand, and we will not set aside its findings or judgment unless clearly erroneous. *Id.*

Pursuant to Indiana Code section 31-35-2-4(b)(2), DCS must prove the following in order to terminate a parent-child relationship:

> (A) that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

DCS must prove these allegations by clear and convincing evidence. *In re N.G.*, 51 N.E.3d 1167, 1170 (Ind. 2016).

# II. Sufficiency

[11] Mother's sole argument on appeal is that the evidence is insufficient to support the order terminating her parent-child relationship with Minor Children. Specifically, Mother contends that DCS failed to prove by clear and convincing evidence that continuation of the parent-child relationship poses a threat to the well-being of Minor Children and that termination is in Minor Children's best interests.

### *Threat to the Well-Being of Minor Children*

[12] To meet this statutory element, "[c]lear and convincing evidence need not reveal that 'the continued custody of the parents is wholly inadequate for the child's very survival.'" *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005) (quoting *Egly v. Blackford Cty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1233 (Ind. 1992)). "Rather, it is sufficient to show by clear and convincing evidence that 'the child's emotional and physical development are threatened' by the respondent parent's custody." *Id.* (quoting *Egly*, 592 N.E.2d at 1234).

[13] In evaluating the well-being of the children, "[juvenile] courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment." *A.F. v. Marion Cty. Office of Family & Children*, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002). And here, Mother has a long history of substance abuse issues, unemployment, and an inability to obtain adequate

employment.[3] The juvenile court determined that Minor Children have ongoing behavioral issues brought on principally by trauma in the home and that "the children deserve a loving, caring, safe, stable, and drug free home." Appellant's App. Vol. II p. 39.

[14] We agree with the juvenile court's assessment. Minor Children were initially removed from Mother's home and placed in foster care because police officers found illegal substances inside the home. And Mother herself admitted that she has a substance abuse problem and that there are ongoing domestic violence issues in the home that have yet to be resolved. What is most concerning to us is that Mother refuses to participate consistently with services designed to solve these problems. Though she showed some progress at the beginning of her treatment regimen, Mother quickly became uncooperative. She incessantly either refused to submit to drug screens or returned positive drug screens, a clear violation of the dispositional decree. Mother even confessed to having used heroin just days before the termination hearing.

[15] The evidence shows that despite the availability of various services designed to assist Mother with her myriad issues, Mother has not fulfilled her obligations. And as it stands, Mother does not have adequate employment. Moreover, while in their parents' home, Minor Children witnessed domestic violence, repeated

---

[3] We do not imply that those suffering from substance issues or those that are unemployed are per se inadequate parents. Rather, we believe that in this particular case, the cumulative effect of these problems, coupled with Mother's unwillingness to participate in services designed to ameliorate these problems, is a threat to the well-being of Minor Children.

drug use, and guns being shot. Should Minor Children return to Mother's home, the evidence reveals that there is a high likelihood that the unstable environment therein will have a deleterious and prolonged effect on their futures. Therefore, we find that the juvenile court did not err when it concluded that DCS proved by clear and convincing evidence that continuation of the parent-child relationship would be a threat to the well-being of Minor Children.

### *Best Interests of Minor Children*

[16]   "The purpose of terminating parental rights is not to punish parents but to protect their children." *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001). "[I]n determining what is in the best interests of the children, the court is required to look . . . to the totality of the evidence." *Id.* at 776. In so doing, the juvenile court must subordinate the interests of the parents to those of the children involved. *Id.*

[17]   In reaching its decision on this point, the juvenile court found that:

> Neither parent have [sic] engaged in the services offered by [DCS]. Neither parent has adequately addressed their substance abuse issues. Although [M]other attended inpatient substance abuse treatment, [M]other returned to the same environment and the same unhealthy behaviors. Neither of these parents can provide these children a drug free, stable home environment.
>
> The [Minor Children] have behavioral issues including violent behaviors. The [Minor Children's] behaviors include biting, kicking, hitting and rolling around the floors acting like animals. The [Minor Children] are attending Intense Behavior Therapy. The [Minor Children] have experienced intense traumas in their lives that need to be addressed. The [Minor Children's] needs are

being met in their placement and the [Minor Children] are improving.

Appellant's App. Vol. II p. 38. Permanency Worker Klaudia Rogers testified at the termination hearing that termination of Mother's parental rights was in the best interests of Minor Children "[b]ecause the foster parents have been able to identify medical needs that the children have had," and "the foster parents have been able to provide consistency, time and patience in meeting all of their needs." Tr. Vol. II p. 35.

[18] Given the wealth of evidence already discussed, we find that the juvenile court did not err in its assessment. At multiple instances, Mother failed to complete even the most routine tasks as mandated by the CHINS proceedings. At the time of the termination hearing, Mother continued to struggle with substance abuse and instability. It would not have been safe to return Minor Children to her care and custody at that time or at any point in the near future. Minor Children need and deserve to have a loving and stable household in which to thrive, and they have that with their foster family. With all of this in mind and given that DCS has established a solid permanency plan for Minor Children's adoption, we find that the juvenile court did not err by concluding that DCS proved by clear and convincing evidence that termination in in Minor Children's best interests.

[19] The judgment of the juvenile court is affirmed.

Bradford, C.J., and Pyle, J., concur.