## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 23 2019, 10:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven Knecht
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Marjorie Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of:

H.M. (Minor Child)

and

B.L. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

October 23, 2019

Court of Appeals Case No.
19A-JT-980

Appeal from the Tippecanoe Superior Court

The Honorable Bradley K. Mohler, Special Judge

Trial Court Cause No.
79D03-1809-JT-125

**Baker, Judge.**

B.L. (Mother) appeals the juvenile court's order terminating her parent-child relationship with H.M. (Child), arguing that the evidence is insufficient to support the order. Finding the evidence sufficient, we affirm.

# Facts

Child was born to Mother and A.M. (Father)[1] on February 2, 2016. On November 1, 2016, the Department of Child Services (DCS) became involved with the family and removed Child from the home due to Mother's untreated mental health problems, substance abuse issues, and a failed suicide attempt. DCS did not place Child with Father because Father could not provide documentation proving paternity of the Child. Even after Father established paternity, Child remained in foster care with a half-sibling. Mother already had two other children in foster care at the time.

On November 2, 2016, DCS filed a petition alleging that Child was a Child in Need of Services (CHINS). At the conclusion of the detention hearing on that same day, Mother admitted to being addicted to heroin. Mother has a long history of mental illness and substance abuse. Mother has been diagnosed with bipolar disorder and has admitted to frequently using both methamphetamine and heroin. Mother was also taken into custody because of an active warrant

---

[1] Child's father is not part of this appeal.

for prostitution. The juvenile court adjudicated Child to be a CHINS on December 29, 2016, and entered a dispositional decree on January 20, 2017. Under the terms of that dispositional decree, Mother was required to:

> 1. Participate in parenting time pursuant to party agreement and court order.
> 2. Participate in a substance use assessment and follow all recommendations.
> 3. Submit to all drug screen requests, random and non-random.
> 4. Participate in case management and follow all recommendations.
> 5. Participate in mental health assessment and follow all recommendations.

Appellee's App. Vol. II p. 83-84. Additionally, both Mother and Father were required to attend all hearings and court proceedings; provide updates to DCS, Family Case Managers (FCMs), and Court-Appointed Special Advocates (CASAs); maintain safe and suitable housing for Child; not possess or consume alcohol or any illegal or non-prescribed controlled substances; obtain a stable source of income; and pay child support. *See generally id.* at 82-83.

[4] Soon enough, Mother began returning positive drug screens. In April 2017, July 2017, October 2017, and February 2018, the juvenile court determined that Mother had not complied with the terms of the CHINS dispositional decree. Mother failed to attend therapy appointments and to obtain the medication needed to treat her ongoing mental health issues.

[5] Mother initially participated in fully supervised visitations with Child at a DCS facility. Eventually, Child was allowed to stay at Mother's home for overnight

visits. However, FCM Sally Messmer testified that by February 2018, Mother had been consistently missing appointments and drug screens and returning positive drug screens. Thereafter, DCS stopped the overnight visits.

[6] The juvenile court suspended Mother's parenting time on May 14, 2018, after Mother admitted to using methamphetamine. The visits were reinstated on November 13, 2018, after Mother had returned some clean drug screens and participated with services. However, Mother proceeded to miss several visits and returned more positive drugs screens. The juvenile court again suspended visitation, and Mother has not visited with Child since December 7, 2018.

[7] During the entirety of the CHINS proceedings, Mother held a variety of part-time jobs. Additionally, Mother's only housing was an apartment she shared with her boyfriend, B.S. The record reveals that Mother was receiving significant financial assistance from B.S. and could not maintain housing on her own. After B.S. became ill and was hospitalized for an extended period of time, the couple had to move out in June 2018. The record does not reveal where Mother has been living since then.

[8] DCS filed a petition for termination of parental rights on September 4, 2018. At the January 31, 2019, fact-finding hearing, both FCM Messmer and CASA Hilary Laughner testified that Mother had not been consistent in her treatment, cooperation with DCS, or commitment to the proceedings for two years and that she was unable to properly care for Child due to her severe mental health issues and drug dependency. Mother testified that she had been making

improvements and had started a new treatment regimen that was showing positive results. She also testified that she plans to work at the Salvation Army in order to pay for prospective housing. However, Mother did not specify when her job would begin or when she would acquire said housing.

[9] On March 31, 2019, the juvenile court issued an order terminating Mother's parent-child relationship with Child. Mother now appeals.

# Discussion and Decision

## I. Standard of Review

[10] When reviewing an order on the termination of a parental relationship:

> We do not reweigh the evidence or determine the credibility of witnesses, but consider only the evidence that supports the judgment and the reasonable inferences to be drawn from the evidence. We confine our review to two steps: whether the evidence clearly and convincingly supports the findings, and then whether the findings clearly and convincingly support the judgment. Reviewing whether the evidence "clearly and convincingly" supports the findings, or the findings "clearly and convincingly" support the judgment, is not a license to reweigh the evidence.

*In re E.M.*, 4 N.E.3d 636, 642 (Ind. 2014) (internal citations omitted) (some internal quotations omitted). We must give "due regard" to the juvenile court's ability to judge witness credibility firsthand, and we will not set aside its findings or judgment unless clearly erroneous. *Id.*

Pursuant to Indiana Code section 31-35-2-4(b)(2), DCS must prove the following in order to terminate the parental rights for a CHINS:

> (A) that one (1) of the following is true:
>
>> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>>
>> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>>
>> (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

DCS must prove these allegations by clear and convincing evidence. *In re N.G.*, 51 N.E.3d 1167, 1170 (Ind. 2016).

# II. Sufficiency

[12] Mother's sole argument on appeal is that the evidence is insufficient to support the order terminating her parent-child relationship with Child. Specifically, Mother contends that DCS failed to prove by clear and convincing evidence that the conditions that led to removal will not be remedied; that continuation of the parent-child relationship poses a threat to Child's well-being; and that termination is not in Child's best interest.

### *Conditions Resulting in Removal*

[13] The juvenile court had to first determine what conditions led to DCS's placement of Child in foster care and then determine whether there is a reasonable probability that those conditions will not be remedied. *In re I.A.*, 934 N.E.2d 1127, 1134 (Ind. 2010). Here, Child was removed because of Mother's untreated mental health problems, substance abuse issues, and a failed suicide attempt. Later, in its termination order, the juvenile court held as follows:

> By choosing not to fully participate in the CHINS case, the Parents have demonstrated an unwillingness to change their behavior. A pattern of unwillingness to deal with parenting problems and to cooperate with those providing social services, in conjunction with unchanged conditions, support a finding that there exists no reasonable probability that the conditions will change, as grounds for terminating parental rights.

Appellant's App. Vol. II p. 27.

[14] There is ample evidence supporting this conclusion. Despite multiple opportunities for reform, Mother did not comply with services. Mother consistently failed to attend therapy sessions and to obtain the proper medication to treat her mental health issues, and she repeatedly refused to submit to drug screens. And even when she complied, many of the drug screens were positive—a clear violation of the terms of the CHINS dispositional decree. Any time Mother showed some indicia of progress, she regressed and directly violated the juvenile court's orders. *See, e.g.*, *Lang v. Starke Cty. Office of Family & Children*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007) (holding that the juvenile court may "consider the parent's response to the services offered through . . . DCS[]" in CHINS proceedings).

[15] Mother frequently missed visits or provided positive drug screens, leading to the suspension of visits. She also failed to make any meaningful efforts to establish a bond with Child from the moment of birth. This failure to exercise a parental right to visit one's child demonstrates a "lack of commitment to complete the actions necessary to preserve [the] parent-child relationship[.]" *In re A.L.H.*, 774 N.E.2d 896, 900 (Ind. Ct. App. 2002). Mother has not taken the DCS proceedings seriously, and as a result, has demonstrated that her behavior that led to Child's removal will not change. Thus, the evidence is sufficient to support the juvenile court's conclusion that there is a reasonable probability that the conditions resulting in Child's removal will not be remedied.

### *Threat to Child's Well-Being*[2]

[16] To meet this statutory element, "[c]lear and convincing evidence need not reveal that 'the continued custody of the parents is wholly inadequate for the child's very survival.'" *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005) (quoting *Egly v. Blackford Cty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1233 (Ind. 1992)). "Rather, it is sufficient to show by clear and convincing evidence that 'the child's emotional and physical development are threatened by the respondent parent's custody.'" *Id.* (quoting *Egly*, 592 N.E.2d at 1234). Here, the record shows that despite assistance from DCS in the form of inpatient treatment, medication, and supervised visits, Mother has not improved, threatening Child's well-being.

[17] In evaluating the well-being of the child, "[juvenile] courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment." *A.F. v. Marion Cty. Office of Family & Children*, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002). Here, Mother has a long history of mental health problems, substance abuse issues, and neglect of Child. The evidence demonstrates that Mother is suffering from numerous health issues and the juvenile court found that in her current state, Mother cannot properly

---

[2] We note that the termination statute is phrased in the disjunctive, and because we find that the element of showing that the conditions that led to Child's removal will not be remedied has been satisfied, we are not required to address this issue. However, we choose to do so briefly.

care for Child. Additionally, Mother has failed to secure full-time employment or adequate housing.[3] Given this information, we find that the juvenile court did not err when it concluded that DCS proved by clear and convincing evidence that Mother's continued custody of Child would be a threat to Child's well-being.

### Best Interest of Child

[18] "The purpose of terminating parental rights is not to punish parents but to protect their children." *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001). "[I]n determining what is in the best interests of the children, the court is required to look . . . to the totality of the evidence." *Id.* at 776. In so doing, the juvenile court must subordinate the interests of the parents to those of the children involved. *Id.*

[19] The juvenile court determined that

> [I]t is in [Child's] best interests that the parent-child relationship be terminated. The FCM and the CASA testified that termination of the Parents' parental rights was in [Child's] best interests. The recommendation of a child's caseworker and guardian ad litem [CASA] that parental rights should be terminated support a finding that termination is in the child's best interests. *In Re J.C.*, 994 N.E.2d 278, 290 (Ind. App. 2013); *In Re A.B.*, 887 N.E.2d 158 (Ind. App. 2008).

---

[3] Though Mother contends that she will soon be working for the Salvation Army and that that job will hopefully assist her with independent housing, we decline to consider this evidence as persuasive because it is, at most, speculative and aspirational.

Appellant's App. Vol. II p. 28-29. FCM Messmer and CASA Laughner even testified at the termination hearing that there is a permanency plan established for Child to be adopted by his foster parents. *See generally* Tr. Vol. II p. 150-52. They testified that Child is currently thriving in a safe, comfortable, and healthy environment and that Child needs this stability in order to grow and prosper.

[20] Given the wealth of evidence already discussed, we find that the juvenile court did not err by concluding that termination of the parent-child relationship is in Child's best interest. We do not dispute the small progress that Mother has made thus far—she claims to have found a solid inpatient treatment facility and that she will soon be employed and may secure housing. However, given that Child and Mother have virtually no bond and that she failed to take advantage of the mental health and substance abuse treatment available for nearly two years during the CHINS case, the juvenile court did not err by concluding that DCS proved by clear and convincing evidence that termination is in Child's best interest.

[21] The judgment of the juvenile court is affirmed.

Kirsch, J., and Crone, J., concur.