## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 30 2020, 8:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kyle D. Gobel
Collier Gobel Homann, LLC
Crawfordsville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re the Termination of the Parent-Child Relationship of D.H. (Minor Child),

F.H. (Father),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

April 30, 2020

Court of Appeals Case No. 19A-JT-2011

Appeal from the Montgomery Superior Court

The Honorable Heather L. Barajas, Judge

Trial Court Cause No. 54D01-1808-JT-251

**Baker, Judge.**

[1] F.H. (Father) appeals the juvenile court's order terminating his parent-child relationship with D.H. (Child), arguing that the evidence is insufficient to support the order. Finding the evidence sufficient, we affirm.

## Facts

[2] Child was born to Father and J.A. (Mother) on May 21, 2017.[1] The next day, Department of Child Services (DCS) assessor Jonathan Chadd received a report alleging that Mother had tested positive for marijuana in the hospital while she was giving birth. There were suspicions that Father had been using illegal substances as well. Chadd spoke with Father and Mother, both of whom admitted to using marijuana. They submitted to a drug screen and tested positive for marijuana. Therefore, on June 23, 2017, DCS filed a petition alleging that Child was a Child in Need of Services (CHINS).[2] At that time, Child remained in the care and custody of Father and Mother.

[3] Family Case Manager (FCM) Kimberly Whitus began working with the family. Father, Mother, and Child had been living with paternal grandmother, but they soon moved into a hotel. Father confided in FCM Whitus that Mother had been using heroin and methamphetamine. FCM Whitus then contacted the police, who went to the hotel room and found methamphetamine and heroin

---

[1] This Court, in a separate appeal, already affirmed the order terminating Mother's parent-child relationship with Child. *In re M.A.*, Cause No. 19A-JT-1744 (Ind. Ct. App. Feb. 28, 2020). Therefore, Mother is not a party to this appeal.

[2] Child has an older sibling, M.A., who is the offspring of Mother and a different man. The termination order at issue here pertains only to Father's relationship with his own biological child, D.H.

alongside Child. Child was removed from his parents' care and custody on August 5, 2017, and placed with his paternal grandmother.

[4]     On September 12, 2017, following a hearing, the juvenile court adjudicated Child to be a CHINS and entered a dispositional decree on November 7, 2017. Per that dispositional decree, Father was required to (1) maintain a legal and stable source of income; (2) obtain adequate housing; (3) complete a substance abuse assessment and treatment; (4) abstain from alcohol and any illegal controlled substances; (5) submit to random drug screens; (6) complete a psychological evaluation; and (7) attend all scheduled visitations. The initial permanency plan was for reunification of Father and Child.

[5]     At first, Father complied with the terms of the dispositional decree. However, Father started testing positive for both marijuana and methamphetamine. FCM Whitus then recommended additional random drug screens and a shift towards intensive outpatient relapse prevention. Father quickly became uncooperative, missed multiple drug screens, and did not engage in recommended services. In fact, on February 2, April 18, April 20, April 26, and April 30, 2018, Father tested positive for one or many of the following substances: marijuana, amphetamine, and/or methamphetamine. According to clinical psychologist Dale Crowder, who ran Father's outpatient therapy sessions, Father attended only one individual session and did not complete the group therapy program. Thus, the outpatient facility closed Father's case and dismissed him.

Lifeline Youth and Family Services (Lifeline) started working with Father on obtaining stable housing, employment, and childcare. According to Lifeline family consultant Jennifer Fortney, Father was eager to get his GED and a better job. However, Father changed his mind, lost interest in pursuing any form of higher employment, and deemed Lifeline's services to be unnecessary. Lifeline eventually discharged Father.

DCS scheduled visits and had Child's paternal grandmother supervise them. It took approximately one month for Father to visit Child, and thereafter, Father only visited Child approximately four or five times over the course of six months. And during those visits, Father showed no interest in establishing a strong and durable bond with Child that would continue after the court-ordered proceedings.

Moreover, throughout the entirety of the CHINS case, Father was routinely unemployed. Though he had interviewed with and been hired by various fast-food restaurants, Father either turned down the offers or left his positions just after starting, claiming that the pay was too low or that the restaurants were too "high maintenance." Tr. Vol. II p. 145. Father and Mother were either homeless or lived in and out of hotel rooms. The two had a chaotic and sometimes violent relationship, prompting both Father and Mother to testify that there were domestic violence issues between them. *See id.* at 67, 143.

FCM Whitus kept in regular contact with Child's paternal grandmother for updates on Child's placement. FCM Whitus testified that Child had "met his

development milestones" and that "[h]e's very close and bonded to his grandmother and to his uncles[.]" *Id.* at 221-22. On July 9, 2018, the permanency plan changed to adoption by Child's paternal grandmother.

[10] On August 29, 2018, DCS filed a petition for involuntary termination of the parent-child relationship between Father and Child. The juvenile court held termination hearings on November 9, 2018, and February 19, 2019, at which FCM Whitus testified that termination of parental rights would be in Child's best interests. As FCM Whitus attested, Child's paternal grandmother is ready and able to adopt Child and has already formed a strong and lasting bond with him. According to FCM Whitus, Father's repeated drug use, instability, homelessness, lack of income, violent behavior in the home, and unwillingness to commit to rehabilitative services further support the necessity of termination. Court-Appointed Special Advocate (CASA) James McBee echoed FCM Whitus's recommendations and opined that paternal grandmother's adoption of Child was in Child's best interests. The juvenile court then took the matter under advisement.

[11] On July 19, 2019, the juvenile court issued an order terminating the parent-child relationship between Father and Child. Father now appeals.

# Discussion and Decision

## I. Standard of Review

[12] When reviewing an order on the termination of a parental relationship:

We do not reweigh the evidence or determine the credibility of witnesses, but consider only the evidence that supports the judgment and the reasonable inferences to be drawn from the evidence. We confine our review to two steps: whether the evidence clearly and convincingly supports the findings, and then whether the findings clearly and convincingly support the judgment.

Reviewing whether the evidence "clearly and convincingly" supports the findings, or the findings "clearly and convincingly" support the judgment, is not a license to reweigh the evidence.

*In re E.M.*, 4 N.E.3d 636, 642 (Ind. 2014) (internal citations omitted) (some internal quotations omitted). We must give "due regard" to the juvenile court's ability to judge witness credibility firsthand, and we will not set aside its findings or judgment unless clearly erroneous. *Id.*

[13] Pursuant to Indiana Code section 31-35-2-4(b)(2), DCS must prove the following in order to terminate the parent-child relationship

(A) that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

DCS must prove these allegations by clear and convincing evidence. *In re N.G.*, 51 N.E.3d 1167, 1170 (Ind. 2016).

# II. Sufficiency

Father's sole argument on appeal is that the evidence is insufficient to support the order terminating his parent-child relationship with Child. Specifically, Father contends that DCS failed to prove by clear and convincing evidence that the conditions that led to Child's removal will not be remedied; that continuation of the parent-child relationship poses a threat to Child's well-being; and that termination is in Child's best interests.

## *Conditions Resulting in Removal*

[15] First, we must consider what conditions led to Child's initial and continued removal and second, whether DCS proved that there is a reasonable probability that those conditions will not be remedied. *In re I.A.*, 934 N.E.2d 1127, 1134 (Ind. 2010). Child was initially removed from Father's care and custody after police officers arrived at Father and Mother's hotel room and discovered illegal controlled substances inside and within reach of the children. Plus, according to both Father and Mother, Child was living in an unstable home where there was domestic violence. Child continued to be removed from Father's care because of continued drug use, failure to participate in court-ordered services, and unstable employment and housing

[16] Upon review of the record, we find that there was ample evidence supporting the juvenile court's conclusion that the conditions resulting in removal would not be remedied. While he cooperated in the beginning, Father quickly stopped complying with services. Father consistently failed to attend both individual and group therapy sessions for his mental health and substance abuse issues. And even when Father did comply, he returned mostly positive drug screens—a clear violation of the terms of the CHINS dispositional decree. Any time Father showed some indicia of progress, he regressed and directly violated the juvenile court's orders. *See, e.g.*, *Lang v. Starke Cty. Office of Family & Children*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007) (holding that the juvenile court may "consider the parent's response to the services offered through . . . DCS[]" in CHINS proceedings).

Father also failed to make any meaningful efforts to establish a bond with Child from the moment of birth. This failure to exercise a parental right to visit one's child demonstrates a "lack of commitment to complete the actions necessary to preserve [the] parent-child relationship[.]" *In re A.L.H.*, 774 N.E.2d 896, 900 (Ind. Ct. App. 2002). Based on the record, we can only find that the evidence is sufficient to support the juvenile court's conclusion that there is a reasonable probability that the conditions resulting in Child's removal will not be remedied.

## Threat to Child's Well-Being[3]

To meet this statutory element, "[c]lear and convincing evidence need not reveal that 'the continued custody of the parents is wholly inadequate for the child's very survival.'" *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005) (quoting *Egly v. Blackford Cty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1233 (Ind. 1992)). "Rather, it is sufficient to show by clear and convincing evidence that 'the child's emotional and physical development are threatened' by the respondent parent's custody." *Id.* (quoting *Egly*, 592 N.E.2d at 1234).

In evaluating the well-being of the child, "[juvenile] courts have properly considered evidence of a parent's prior criminal history, drug and alcohol

---

[3] We note that the termination statute is phrased in the disjunctive, and because we find that the element of showing that there is a reasonable probability that the conditions that led to Child's removal will not be remedied has been satisfied, we are not required to address this issue. However, we choose to do so briefly.

abuse, history of neglect, failure to provide support, and lack of adequate housing and employment." *A.F. v. Marion Cty. Office of Family & Children*, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002). Here, Father has a long history of substance abuse issues, unemployment, an inability to obtain adequate housing, and even domestic violence.[4] The evidence shows that despite the availability of various outpatient programs willing to assist Father with his myriad issues, Father remains uncooperative. And as it stands, Father does not have adequate housing or employment, even though he applied for—and turned down—various jobs throughout the CHINS proceedings.

[20] Moreover, we are not convinced that Father has obviated his drug issues or his potential to become violent in the home—the two most troubling aspects of this case. Should Child return to Father's home, the evidence shows that there is a high likelihood that the unstable environment therein will have a deleterious and prolonged effect on Child's future. Therefore, we find that the juvenile court did not err when it concluded that DCS proved by clear and convincing evidence that continuation of the parent-child relationship would be a threat to Child's well-being.

---

[4] We do not imply that those suffering from substance abuse issues, those that are unemployed, and those that are homeless are per se inadequate parents. Rather, we believe that in this particular case, the cumulative effect of these problems, coupled with Father's unwillingness to participate in services designed to ameliorate these problems, is a threat to Child's well-being.

### *Best Interests of Child*

[21] "The purpose of terminating parental rights is not to punish parents but to protect their children." *In re T.F.*, 743 N.E.2d 766, 773 (Ind. CT. App. 2001). "[I]n determining what is in the best interests of the children, the court is required to look . . . to the totality of the evidence." *Id.* at 776. In so doing, the juvenile court must subordinate the interests of the parents to those of the children involved. *Id.*

[22] Here, the juvenile court determined that:

> The DCS has proven by clear and convincing evidence that termination is in the best interests of [Child]. None of the parents are in any better position to provide [Child] with appropriate care, supervision or a safe, nurturing and stable home than they were at the beginning of DCS' involvement with the family. None of the parents can meet [Child's] needs. [Child] need[s] a stable and nurturing home to meet [his] many needs. Both the DCS case manager and the CASA believe that termination is in the best interest of the child.

Appellant's App. Vol. II p. 15. FCM Whitus and CASA McBee both testified at the termination hearings that it is in Child's best interests to be adopted by his paternal grandmother. They testified that Child is thriving in a safe, comfortable, and healthy environment and that Child needs this stability in order to grow and prosper.

[23] Given the wealth of evidence already discussed, we find that the juvenile court did not err by concluding that termination of the parent-child relationship is in Child's best interests. At multiple instances, Father failed to complete even the

most routine tasks as mandated by the CHINS proceedings. He also failed to take advantage of the numerous mental health and substance abuse treatment programs available to him, despite multiple opportunities for participation.

[24] Child needs and deserves to have a loving and stable household in which to thrive, and he has that with his paternal grandmother. With all of this in mind and given that DCS has established a solid permanency plan for Child's adoption, we find that the juvenile court did not err by concluding that DCS proved by clear and convincing evidence that termination is in Child's best interests.

[25] The judgment of the juvenile court is affirmed.

Bradford, C.J., and Pyle, J., concur.