



FILED

Jun 10 2024, 10:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N  T H E

# Court of Appeals of Indiana

In the Matter of R.L. Jr., M.L., T.A., An.A., Q.A., Z.L., I.L., and A.L. (Minor Children), Children in Need of Services,

and

A.A. (Mother), R.L., Sr. (Father), and O.A. (Father),

*Appellants-Respondents*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

---

June 10, 2024

Court of Appeals Case No.
23A-JC-923

Appeal from the Lawrence Circuit Court

The Honorable Nathan Nikirk, Judge

Trial Court Cause No.
47C01-2302-JC-44
47C01-2302-JC-45
47C01-2302-JC-46

47C01-2211-JC-385
47C01-2211-JC-386
47C01-2211-JC-387
47C01-2211-JC-388
47C01-2211-JC-391

---

**Opinion by Judge Kenworthy**
Chief Judge Altice and Judge Weissmann concur.

**Kenworthy, Judge.**

## Case Summary

[1] Eight children in a blended family were adjudicated children in need of services ("CHINS"). O.A., father of three of the children, appeals the judgment, asking what the Indiana Department of Child Services ("DCS") must allege when it files a new CHINS petition after an earlier petition is dismissed without prejudice for a procedural reason. R.L., father of the other five children, and A.A., mother of O.A.'s three children and three of R.L.'s children, also appeal the judgment, asking whether the trial court erred in entering pre-disposition no contact orders ("NCOs") and denying their motion to disqualify the DCS attorney. They also claim there was structural error in the proceedings.

[2] We discern no error in the procedural issues raised by the parents, and we decline to find structural error in this CHINS proceeding. As the parents do not challenge the trial court's findings of fact, the sufficiency of the evidence

supporting the CHINS adjudications, or the contents of the dispositional orders, we affirm the trial court's judgment.

## Facts and Procedural History[1]

### The Parties and the Filing of CHINS Petitions

Father R.L. and mother S.C.[2] have two children (the "Oldest Children") together:

> R.L. Jr., born February 9, 2009, 13 years old[3]
> M.L., born June 9, 2010, 12 years old

Father O.A. and mother A.A. have three children (the "Middle Children") together:

> T.A., born February 2, 2012, 10 years old
> An.A., born August 18, 2014, 8 years old
> Q.A., born December 22, 2016, 5 years old

And R.L. and A.A. have three children (the "Youngest Children") together:

> Z.L., born April 19, 2019, 3 years old
> I.L., born April 8, 2020, 2 years old
> A.L., born May 7, 2021, 1 year old

---

[1] We heard oral argument in this case on March 26, 2024, in our courtroom at the Indiana Statehouse. We thank counsel for their preparation and helpful presentations.

[2] S.C. participated in the CHINS proceedings but does not participate in this appeal.

[3] The children's ages listed here are as of the time this case began.

[4] In 2022, all eight children lived with R.L. and A.A. ("Mother"). Mother's adult brother J.Z. also lived with them. In late 2022, DCS investigated a report alleging the Oldest Children were victims of physical abuse in the home by R.L., Mother, and J.Z. As a result of the investigation, DCS removed all the children from the home on an emergency basis. The Oldest Children were placed in relative care, the Middle Children were placed with O.A., and the Youngest Children were placed in foster care. DCS sought permission to file CHINS petitions, alleging, in part:

- The Oldest Children were routinely beaten with a paddle on the back and buttocks or made to put their hands flat on a table while the paddle was used in a chopping motion toward their hands.

- R.L., Mother, and J.Z. hit R.L. Jr. with a paddle on or about October 30, 2022, and he had severe bruising on his lower back and buttocks.

- M.L. was hit with a paddle on or about October 30, 2022, and had bruising on his face.

- M.L. had bruising on his upper back from being kicked by R.L., on his middle back from being punched by R.L., and bruising and scarring on his upper left thigh from being hit by the paddle. He also had healed blisters on his palms from being burned by R.L. with a lighter while Mother held him down.

- The Oldest Children were hit on the hands with the paddle on November 1, 2022. X-rays of R.L. Jr.'s hands showed a broken finger.

- The Oldest Children were hit with the paddle and made to stay home from school if they did not get their chores done.

- Mother made the children kneel on rice as punishment.

- The paddle was also used on the Middle Children, though to a lesser degree.

R.L., Mother, and O.A. appeared at an initial/detention hearing on November 4, 2022. The trial court appointed separate counsel for R.L. and Mother but O.A. declined appointment of an attorney. After reviewing the reports and hearing evidence, the court authorized DCS to file the CHINS petitions and approved the children's continued detention.[4]

DCS orally requested "a no contact order between [R.L. and Mother] and the five oldest children," noting there was a "criminal investigation going on." *Tr. Vol. 2* at 50. The court granted DCS' request but advised R.L. and Mother they had the "right to revisit that no contact order at any point." *Id.* The court memorialized its ruling on DCS' request as part of its written order on the initial/detention hearing:

> The Court also orders a No Contact Order between [the Oldest and Middle Children] and Mother . . . and [R.L.] until further Order of the Court. DCS is ordered to file its request pursuant to I.C. 31-34-25 et seq. or I.C. 31-32-13-1 to ensure the [clerk]

---

[4] The CHINS petitions alleged all the children were CHINS pursuant to Indiana Code Section 31-34-1-1 ("Inability, Refusal or Neglect"), and the Oldest Children and Middle Children were also CHINS pursuant to Section 31-34-1-2 ("Act or Omission Seriously Endangering Physical or Mental Health"), and Section 31-34-12-4 (rebuttable presumption of CHINS where child has been injured). *Appellants' Jt. App. Vol. 2* at 150–55.

properly documents said No Contact Orders in compliance with I.C. 5-2-9. Counsel for Mother . . . and [R.L.] may request a hearing on the No Contact Orders.

*Appellants' Jt. App. Vol. 2* at 161.

[7] Shortly after the initial hearing, DCS learned O.A. was letting the Middle Children speak with Mother over the phone. DCS reported this to the court, and in turn, the court amended its initial hearing order to make clear "no contact" meant any direct or indirect communication, including by telephone. *Id.* at 169.

[8] The eight CHINS cases ultimately proceeded to a consolidated fact-finding hearing on February 23, 2023, after which the trial court adjudicated the children as CHINS and issued dispositional orders. No party challenges on appeal the merits of the CHINS adjudication or the contents of the dispositional orders. Instead, Mother and R.L. jointly and O.A. separately raise issues related to rulings the trial court made before the fact-finding hearing. Because the relevant procedural history between the initial hearing in November 2022 and the fact-finding hearing in February 2023 is different for the two appeals, we separately set forth the specific events pertinent to each party's appeal.[5]

---

[5] By order of this Court dated August 28, 2023, the eight separate appeals—one for each child—were consolidated under this single cause number.

## O.A.'s Appeal: Continuance of Fact-Finding Hearing and Motions to Dismiss

[9] At the end of the November 4 initial/detention hearing, the trial court advised the parties a pretrial conference was scheduled for December 5 and a fact-finding hearing on all eight cases was scheduled for December 16. In late November 2022, R.L. requested a continuance of the December 16 fact-finding hearing, stating Mother and DCS did not object to a continuance. O.A., *pro se* at the time, was not mentioned in R.L.'s motion and was not advised of the request. On November 28, the court granted a continuance and reset the fact-finding hearing for January 27, 2023. This date was more than sixty days after the CHINS petitions were filed.

[10] O.A. requested and was appointed counsel at the December 5 pretrial conference. On January 24, O.A. moved to dismiss the Middle Children's CHINS cases, alleging he did not consent to the December 16 fact-finding hearing being continued. At a hearing on his motion to dismiss, O.A. testified he was aware of the allegations of abuse in Mother and R.L.'s home, but he wanted the Middle Children's cases dismissed and for the Middle Children to be returned to Mother's home with no services in place. *See Tr. Vol. 2* at 116. Following the hearing, the trial court granted O.A.'s motion and dismissed the CHINS petitions without prejudice.[6]

---

[6] The Middle Children were not returned to Mother's custody after dismissal but remained with O.A. *See id.* at 24.

Three days after the trial court granted O.A.'s motion to dismiss, DCS filed new petitions alleging the Middle Children were CHINS.[7] These petitions included most of the allegations from the original petitions and added allegations of conduct or events occurring after the original petitions were filed, including:

- The Oldest and Middle Children disclosed additional instances of abuse by R.L. and Mother in interviews conducted after the original CHINS petitions were filed.

- R.L., Mother, and J.Z. had been charged with crimes against the Oldest Children.

- O.A. allowed the Middle Children to speak with Mother on the telephone despite the NCOs.

- Mother left Christmas gifts for the Middle Children even after the trial court clarified the NCOs.

- Civil orders of protection had been issued against R.L. with respect to the Middle Children and Mother still resided with R.L.

---

[7] These petitions alleged the Middle Children were CHINS pursuant to Indiana Code Sections 31-34-1-1 and 31-34-1-2 as before, but now alleged they were also CHINS pursuant to Section 31-34-12-4.5 (rebuttable presumption of CHINS where child lives in same household as adult who committed or is charged with an offense against a child).

At the same time, DCS filed a motion for leave to amend the petitions filed in the original CHINS cause numbers for the Oldest and Youngest Children "to include events that have happened since the filing of the original CHINS petitions" in November 2022. *Appellants' Jt. App. Vol. 3* at 95. The trial court granted this motion.

- O.A. testified he wanted the Middle Children returned to Mother if the original petitions were dismissed despite knowing of the physical abuse in her home.

[12] O.A. moved to dismiss the new petitions, alleging they were barred by res judicata and, independently, were improper because DCS failed to allege material facts occurring after dismissal of the original petitions. The trial court denied the motion to dismiss, concluding the petitions were not barred by res judicata. As for the allegations of the new petitions, the trial court concluded:

> 12. Without a requirement for new material allegations in the petitions alleging CHINS in the new cases, DCS would be able to refile a CHINS petition any time it failed to meet the time restrictions explained in Indiana Code § 31-34-11-1 and could circumvent the policy (to quickly adjudicat[e] these matters) in the statute.
>
> 13. While a majority of the allegations contained in the petitions alleging CHINS in these [new] cases are the same as allegations contained in the prior CHINS cases, DCS does assert new allegations of material fact separate from what was available to DCS when it plead on November 4, 2022.

*Appellants' Jt. App. Vol. 3* at 152 (internal citations and quotation marks omitted). O.A. appeals the trial court's denial of his motion to dismiss the new CHINS petitions.

## R.L. and Mother's Appeal: No Contact Orders and Motion to Disqualify[8]

[13] At the December 5 pretrial conference, Mother's counsel requested a hearing on the NCOs prohibiting R.L. and Mother from contacting the Oldest and Middle Children. The trial court noted evidence was presented as part of the initial/detention hearing but stated, "[I]f you want an additional hearing on the issue, you have that right. And we'll set a hearing." *Tr. Vol. 2* at 58.

[14] Several days after the pretrial conference, DCS sought clarification of the trial court's order that DCS file a written request for NCOs under Indiana Code Chapter 31-34-25 or Section 31-32-13-1. Tonja Kinder, counsel for DCS, alleged she had "researched the cited statutes and cannot file a protective order [under Chapter] 31-34-25 et seq. as the children have not been adjudicated to be CHINS. [Section] 31-32-13-1 deals with controlling the conduct of a person in relation to a child but DCS does not believe that statute can be used to file a protective order." *Appellants' Jt. App. Vol. 2* at 177.

---

[8] O.A. filed his own brief in this appeal on October 6, 2023. His Statement of Case and Statement of Facts were largely confined to the facts and procedural history pertinent to the issue he raised. Mother and R.L. filed a joint brief on October 10, adopting and incorporating by reference the Statement of Case and Statement of Facts from O.A.'s brief. Although the Indiana Rules of Appellate Procedure allow an *appellee* to do this, there is no provision for an *appellant* to do so. *Compare* Ind. Appellate Rule 46(A)(5) & (6), *with* App. R. 46(B)(1). But even if R.L. and Mother could adopt and incorporate O.A.'s Statements of Case and Facts to cut down on repetition, they did not add the facts or procedural history relevant to the unrelated issues they raise. Their failure to include the relevant facts and procedural history has hindered our review of their separate appeal, and we remind them the Appellate Rules require an Appellant's Brief to have a Statement of Case and Statement of Facts describing the course of the proceedings and the facts "relevant to the issues presented for review[.]" App. R. 46(A)(5) & (6).

[15]     Around this same time, two things occurred outside the CHINS cases. First, the State filed criminal charges against R.L., Mother, and J.Z. related to their treatment of the Oldest Children. On January 4, 2023, NCOs were entered in each defendant's criminal case prohibiting contact with the Oldest Children. *See Ex. Vol. 1* at 57, 64, 71. Second, Kinder, on behalf of DCS and as the Oldest and Middle Children's next friend, petitioned in a separate cause for orders of protection against R.L. under Indiana Code Chapter 34-26-5 (the Indiana Civil Protection Order Act). *See Appellants' Jt. App. Vol. 3* at 17–46. The trial court in the protection order causes held a hearing and issued orders of protection on January 13. *See Appellants' Jt. Supp. App. Vol. 2* at 26–59.[9]

[16]     On January 9, 2023, the trial court held a hearing on DCS' motion to clarify, noting at the outset:

> [W]e're going to address – there's a motion for clarification filed by the Department. . . . [DCS] had requested a no contact order at the initial hearing or detention hearing. And I did grant it. However, I can't register that in the protective order registry, . . . but the statute requires me to.
>
> So I had issued an order for the Department to file it in such a way that we could register the order, and so, the Department needs some clarification.

---

[9] Although the CCS, the petitions, and the orders of protection are included in the Appellants' joint appendix, the transcript of the hearing in the protection order cases is not part of this record.

*Tr. Vol. 2* at 74.

[17] DCS informed the court it had petitioned on the Oldest and Middle Children's behalf for civil protection orders against R.L. and stated Mother did not object to having no contact with the Oldest Children. As to Mother and the Middle Children, Kinder said, "[W]e can't file it [under Indiana Code Chapter 31-34-25] because we're not post-disposition. . . . And then the other [statute, Indiana Code Chapter 31-32-13], I didn't think the category fit, for DCS to file on [Mother]." *Id.* at 76. Mother agreed with DCS' assessment: "[T]here are certain delineated ways that DCS is allowed to get no contact orders between parents and children[;] [o]ne is post-disposition, and one is removing the perpetrator from the home." *Id.* at 78. The trial court disagreed, issuing the following order:

> I.C. 31-32-13 et seq. provides the juvenile court authority to issue an Order to control the conduct of any person in relation to the child including protective orders. Filing a request under I.C. 31-32-13 can be done pre-adjudication and an Order issued under I.C. 31-32-13 shall be registered with the Protective Order Registry pursuant to I.C. 5-2-9 as explained in I.C. 31-32-13-9.

*Appellants' Jt. App. Vol. 2* at 185.

[18] DCS then formally moved in the CHINS cases for the issuance of NCOs prohibiting R.L. and Mother from having contact with the Oldest and Middle Children under Indiana Code Chapter 31-32-13 and filed the required Confidential Forms for use by the Protection Order Registry. These motions

for "an order to control the conduct of any person in relation to the child" were set for hearing on January 27 "within the fact finding." *Tr. Vol. 2* at 100, 105.

[19] R.L. and Mother then jointly moved to disqualify Kinder from the CHINS cases, alleging Kinder had violated Indiana Rules of Professional Conduct 1.2(a), 1.7, and 1.8(f) by representing the Oldest and Middle Children as their "next friend" in the civil protection order cases while still representing DCS in the CHINS proceedings:

> In summary, an attorney could not accomplish her client [DCS]'s goals [of obtaining a protective order] in [the CHINS] cause of action, so the attorney assumed representation of [the children,] an opposing party to that action—apparently without the party's knowledge or consent—and initiated a separate cause of action so that the attorney could accomplish [DCS's] goals, all while continuing to represent [DCS] in a matter in which the [children] remained an opposing party.

*Appellants' Jt. App. Vol. 2* at 225–26 (footnote omitted).

[20] Two days before the fact-finding hearing scheduled for January 27, Mother filed a motion for the trial court to continue the fact-finding hearing and instead "use the time scheduled for factfinding to hear the . . . Motion to Disqualify because it would be the most efficient use of the Court's time." *Appellants' Jt. App. Vol. 3* at 61. The trial court continued the fact-finding hearing and held a hearing on January 27 addressing, in part, the motion to disqualify. The trial court denied the motion, finding Kinder had not violated any Rules of Professional Conduct.

[21]    The case proceeded to a fact-finding hearing in late February with Kinder representing DCS. The trial court determined the children were CHINS. At the dispositional hearing in March, the DCS Family Case Manager testified that when DCS filed the new CHINS petitions for the Middle Children, it did not ask for NCOs with Mother, "[w]e just asked for supervised visitation." *Tr. Vol. 3* at 157. At that time, Mother had attended two or three supervised visits with the Middle Children. The dispositional orders required R.L. and Mother to abide by the orders in place in the civil protection order and criminal cases.[10]

[22]    Mother and R.L. appeal the trial court's issuance of the pre-adjudication NCOs and denial of their motion to disqualify Kinder. They also allege structural error in the framework of the proceedings.

## CHINS Proceedings

[23]    The CHINS statutes "aim to protect the rights of parents in the upbringing of their children, as well as give effect to the State's legitimate interest in protecting children from harm." *In re N.E.*, 919 N.E.2d 102, 108 (Ind. 2010) (quoting *In re J.Q.*, 836 N.E.2d 961, 967 (Ind. Ct. App. 2005)). But every CHINS proceeding "has the potential to interfere with the rights of parents in the upbringing of their children." *Id.* Accordingly, the legislature and our

---

[10] It appears the only orders in place after the dispositional hearing regarding Mother and the children were the NCOs in her criminal case prohibiting her from contacting the Oldest Children. R.L. remained subject to the NCOs in the CHINS case and the civil protection orders prohibiting contact with the Oldest and Middle Children and the NCOs in his criminal case prohibiting contact with the Oldest Children.

courts "have instituted significant procedural safeguards" in the CHINS context "to protect both the safety of children and the integrity of the family unit." *Matter of Eq.W.*, 124 N.E.3d 1201, 1209 (Ind. 2019). "Indiana places extra emphasis on [CHINS] proceedings and urges parties to cautiously and meticulously move through each stage of a CHINS proceeding." *Id.* at 1210. A CHINS determination will be reversed only if the trial court's decision was clearly erroneous. *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012).

## O.A.'s Appeal: No Error in Denying O.A.'s Motion to Dismiss the New CHINS Petitions

[24] We generally review trial court rulings on motions to dismiss for an abuse of discretion. *J.F. v. L.K.*, 136 N.E.3d 624, 627 (Ind. Ct. App. 2019). "Discretion is a privilege afforded a trial court to act in accord with what is fair and equitable in each case." *McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175, 180 (Ind. 1993). An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or where the trial court misinterprets the law. *See Fulp v. Gilliland*, 998 N.E.2d 204, 210 (Ind. 2013).

[25] Indiana Code Section 31-34-11-1(a) generally requires a court to complete a fact-finding hearing in a CHINS case "not more than sixty (60) days after a petition alleging that a child is a child in need of services is filed." The time can be extended to 120 days total for any reason "if all parties in the action consent to the additional time." I.C. § 31-34-11-1(b).

[26] DCS filed CHINS petitions for all the children on November 4, 2022. In late January 2023, the trial court dismissed the CHINS petitions for the Middle Children because a fact-finding hearing had not yet been held and O.A. had not consented to a continuance beyond the sixty-day statutory time limit. The remedy for violation of the statutory right of expediency is dismissal without prejudice. I.C. § 31-34-11-1(d) (instructing the court "shall dismiss the case without prejudice" upon a proper motion if the fact-finding hearing is not completed in the appropriate time frame).[11] "A dismissal without prejudice is not a determination of the merits of a complaint and does not bar a later trial of the issues." *Fox v. Nichter Constr. Co., Inc.*, 978 N.E.2d 1171, 1182 (Ind. Ct. App. 2012) (quotation omitted), *trans. denied*.

[27] DCS filed new CHINS petitions for the Middle Children three days after the original petitions were dismissed. O.A. argues the trial court should have dismissed the new petitions "because DCS made no allegations of conduct that occurred after the dismissal of the previous petitions." *Appellant O.A.'s Br.* at 16. O.A. does not invoke Section 31-34-11-1 for this proposition but bases his argument on the language in two cases: *Eq.W.* and *Matter of J.R.*, 98 N.E.3d 652 (Ind. Ct. App. 2018).

[28] In *J.R.*, DCS filed petitions alleging two children were CHINS. A fact-finding hearing began within sixty days of the filing but was continued to a date beyond

---

[11] The trial court's dismissal of the original CHINS petitions pursuant to this statute is not at issue in this appeal.

sixty days. Parents objected to the continuance, and when the court overruled their objection, they moved to dismiss under Section 31-34-11-1(d). The trial court denied the motion, completed the fact-finding hearing more than sixty days after filing, and found the children to be CHINS. Parents appealed, arguing the court erred in denying their motion to dismiss. A panel of this Court agreed, reversing the CHINS adjudication and remanding to the trial court to dismiss the CHINS petitions without prejudice. The Court observed if DCS chose to refile, it "would not be able to just simply refile the *same* CHINS petition." *J.R.*, 98 N.E.3d at 655. Because a CHINS finding should consider the family's condition both when the case is filed and when it is heard, "should DCS refile, it would not be able to rely solely on the evidence that was admitted at the original CHINS factfinding; it would have to also submit *new evidence regarding the conditions at the current time*." *Id.* (emphasis added).

[29] The trial court in *Eq.W.* held a fact-finding hearing on a CHINS petition and concluded DCS failed to present sufficient evidence to support a CHINS finding. The court dismissed the CHINS petition without prejudice,[12] and DCS filed another petition the next day "with essentially the same allegations as its first petition." 124 N.E.3d at 1211. After a fact-finding hearing on this second

---

[12] The separate opinion in *Eq.W.* notes the trial court should have dismissed *with* prejudice:

> [DCS] went to trial and presented evidence in support of its claim that Mother's children needed services. Given the trial court's determination that [DCS] failed to sustain its burden of proof, the court should have entered a merits judgment against [DCS] and in favor of [m]other.

124 N.E.3d at 1216 (Slaughter, J., concurring in part and in the judgment).

petition, the trial court adjudicated children as CHINS and mother appealed. Our Supreme Court held for the first time that claim preclusion generally applies in CHINS proceedings. *Id.* at 1211. If a parent shows claim preclusion applies to a subsequent CHINS petition, the petition must be dismissed. *Id*. at 1212.[13] "However, this dismissal does not mean the State is forever barred from filing a subsequent CHINS petition or even from using a parent's prior actions as evidence in support of a new filing." *Id*. Rather, to avoid the preclusive effect of res judicata, "the State's subsequent petition must include new allegations of material fact *separate from what was available to DCS to use at the original fact-finding hearing*. This new evidence will necessarily include allegations of new material facts that *took place in time after the relevant CHINS petition was dismissed*." *Id.* (emphasis added) (footnote omitted).

[30]     In O.A.'s view, *J.R.* and *Eq.W.* announced the same requirements for a re-filed CHINS petition; he asserts the language of *Eq.W.* is just a "clearer recitation of the rule put forth in *J.R.*" *Appellant O.A.'s Br.* at 19 n.9. O.A. urges us to adopt *Eq.W.*'s language here and hold that any petition filed after a Section 31-34-11-1 dismissal must "include allegations of new material facts that took place in time after the relevant CHINS petition was dismissed." *Id.* at 19 (quoting *Eq.W.*, 124 N.E.3d at 1212).

---

[13] The mother in *Eq.W.* failed to raise the issue of res judicata in the trial court, however, and finding no fundamental error, the Court affirmed the CHINS findings. *Id.* at 1215.

[31] We disagree with O.A.'s premise that *Eq.W.* applies here and decline his invitation to "clarify the rule established in *J.R.*" by "adopt[ing] the supreme court's phrasing [from *Eq.W.*] in the context of I.C. § 31-34-11-1." *Id.* at 19 n.9. *Eq.W.* is distinguishable from both *J.R.* and this case.

[32] *Eq.W.* was decided in the context of a fact-finding hearing at which the trial court considered the allegations of a CHINS petition on the merits and found them wanting. Unlike *J.R.* and this case, the timeliness of the hearing in *Eq.W.* was not at issue and Section 31-34-11-1 did not factor into the decision. The *Eq.W.* requirement that DCS allege in a refiled petition conduct occurring after dismissal acknowledges certain facts have already been tried. And the requirement serves the purpose of res judicata—"to prevent repetitious litigation of disputes that are essentially the same[.]" 124 N.E.3d at 1208 (quoting *Becker v. State*, 992 N.E.2d 697, 700 (Ind. 2013)); *see also R.L. v. Ind. Dep't of Child Servs. & Child Advocates, Inc.*, 144 N.E.3d 686, 689 (Ind. 2020) ("*Matter of Eq.W.* stands for the proposition that when DCS attempts to bite the proverbial apple, it must do so with intentionality and cannot engage in piecemeal litigation to get subsequent bites at the same apple.").

[33] In this case, there is no concern about repetition because there has not yet been a first adjudication on the merits. Indeed, although O.A.'s motion to dismiss alleged the new petitions were barred by res judicata, he concedes on appeal he cannot show all the elements of res judicata because the original petitions were not adjudicated on the merits. *See Appellant O.A.'s Br.* at 16; *see also Davidson v. State*, 211 N.E.3d 914, 921 (Ind. 2023) (setting out the four essential elements of

claim preclusion, including that the former judgment was rendered on the merits). The considerations crucial to the decision in *Eq.W.* are not present here, where dismissal was for procedural, not substantive, reasons.

[34] O.A. also argues his "statutory right to a completed fact-finding hearing within sixty days" would be defeated by allowing the refiling. *Appellant O.A.'s Br.* at 19. Our Supreme Court has acknowledged "the General Assembly has made CHINS actions a priority by placing time constraints on these proceedings[.]" *Matter of M.S.*, 140 N.E.3d 279, 283 (Ind. 2020). But the trial court granted the remedy to which O.A. was entitled when those time constraints were not observed—dismissal of the original CHINS petitions *without* prejudice. If the legislature had intended a parent's right to an expedient hearing to trump all else, it would have directed the dismissal be *with* prejudice. But it did not, and O.A. could have no reasonable expectation DCS could not refile the CHINS cases after they were dismissed. Further, we note our Supreme Court has held even the 120-day deadline may be extended for good cause, demonstrating the timelines may be strict but they are not inviolable. *M.S.*, 140 N.E.3d at 285. Here, the fact-finding hearing was held just twenty-one days after the new CHINS petitions were filed and 111 days after the original petitions were filed—well within the 120 days Section 31-34-11-1 would have allowed if O.A.'s consent to the continuance had been obtained.

[35] *J.R.* observed DCS cannot refile the same petition after a Section 31-34-11-1(d) dismissal because a CHINS finding is based on "the family's condition not just when the case was filed, but also when it is heard" and evidence of current

circumstances is required. 98 N.E.3d at 655 (quoting *In re S.D.*, 2 N.E.3d 1283, 1290 (Ind. 2014)). In refiling the CHINS petitions, DCS assessed the family's condition anew and alleged material facts it had learned since the filing of the original petitions. The original petitions alleged facts related mostly to Mother and R.L. The new petitions allege facts related to O.A., including information gleaned from a hearing just days before the dismissal where O.A. testified he would like the Middle Children returned to Mother's care notwithstanding the abuse that had occurred in her home. And O.A. concedes the new petitions do include "some new information." *Appellant O.A.'s Br.* at 17.

[36] O.A. seeks a procedural remedy and does not challenge the merits of the trial court's decision that the Middle Children are seriously endangered and in need of care unlikely to be provided without the coercive intervention of the court. In the fact-finding order, the trial court adopted as its own finding the following statement by a member of the Riley Child Protection Team:

> It should be noted that children and their siblings in an environment in which they have been maltreated are at significant risk for recurrent and escalating injuries and death in the worse scenarios without appropriate intervention.

*Appellants' Jt. App. Vol. 2* at 123; *see also Ex. Vol. 1* at 30. This finding highlights the danger adopting O.A.'s position would pose to children. If DCS were required to wait to refile until some new act or omission occurred, the intervention could be too late. Such a result would be contrary to the purpose of a CHINS proceeding to protect children and belie our frequent observation

that DCS and the trial court need not wait until a tragedy occurs to intervene. *See Matter of E.K.*, 83 N.E.3d 1256, 1261 (Ind. Ct. App. 2017), *trans. denied*.

[37] The refiled petitions met the standard announced in *J.R.* The trial court did not abuse its discretion in denying O.A.'s motion to dismiss the refiled CHINS petitions.

## Mother and R.L.'s Appeal: No Reversible Error in the CHINS Proceedings

[38] Mother and R.L. allege two discrete errors: the trial court's allegedly unlawful issuance of NCOs before the CHINS dispositions and the denial of their motion to disqualify DCS' counsel for seeking protection orders in a separate proceeding.

[39] They also allege the "combined efforts of the trial court and DCS" in participating in the protective order case constituted structural error depriving them of the constitutional right to parent their children and entitling them to reversal of the CHINS adjudications and a new trial "under a different judicial officer and with an unconflicted attorney for [DCS]." *Appellants R.L. & Mother's Br.* at 14, 16.

### The trial court can lawfully issue pre-adjudication NCOs.

[40] At DCS' oral request during the initial hearing, the trial court ordered there to be no contact between R.L./Mother and the Oldest and Middle Children. It tasked DCS with filing the paperwork necessary to carry out the order. Although the process used to formalize the NCOs and have them entered in the

Protection Order Registry was perhaps unnecessarily convoluted,[14] the basis for the trial court's orders is straightforward.  Indiana Code Section 31-32-13-1 provides:

> Upon a juvenile court's motion or upon the motion of . . . the attorney for the department of child services, . . . the juvenile court may issue an order . . . to control the conduct of any person in relation to the child[.]

I.C. § 31-32-13-1(1) (2006).  Mother and R.L. assert on appeal Section 31-32-13-1 is unconstitutional as applied to them because its use in this case operated as "a total deprivation" of their fundamental right to raise their children. *Appellants R.L. & Mother's Br.* at 7; *see Martin v. Richey*, 711 N.E.2d 1273, 1279 (Ind. 1999) ("[A] facially constitutional statute may be unconstitutional as applied to a particular plaintiff.") (emphasis omitted).

[41]    This constitutional claim is waived.  "[A] party on appeal may waive a constitutional claim, including a claimed violation of due process rights, by raising it for the first time on appeal."  *In re N.G.*, 51 N.E.3d 1167, 1173 (Ind. 2016).  Our review of the record has revealed no instance in which Mother and R.L. raised the issue of the constitutionality of Indiana Code Section 31-32-13-1 before the trial court and Mother and R.L. have directed us to none in support

---

[14] At the hearing on DCS' motion to clarify, the trial court noted it was required to register NCOs in the Protection Order Registry but was unable to do so.  *See Tr. Vol. 2* at 75 (trial court stating, "I issued the [no contact orders] to remain in effect.  Well, the issue is it can't be registered.").  The court had therefore directed DCS to file its request "in such a way that we could register the order[.]"  *Id.* at 74.  Trying to resolve this logistical issue likely led to the confusing procedure employed here.

of their appellate argument.[15]  *See* App. R. 46(A)(8) (requiring each contention to be supported by citation to the record); *see also Oral Argument* at 25:53–26:07, Oral Arguments Online [https://perma.cc/JJ26-3XYA] (Mother's counsel acknowledging they did not make a constitutional claim to the trial court or provide constitutional authority in their briefing on appeal).  "Declining to review an issue not properly preserved for review is essentially a cardinal princip[le] of sound judicial administration."  *Plank v. Cmty. Hosps. of Ind., Inc.*, 981 N.E.2d 49, 53 (Ind. 2013) (internal quotation omitted).

[42]  Mother and R.L. also argue Section 31-32-13-1 cannot apply in a CHINS proceeding because the CHINS statute contains a chapter specifically addressing NCOs.  Under Indiana Code Chapter 31-34-25, the trial court may order a person to refrain from contact with a child who has been adjudicated a CHINS if that is in the best interests of the child.  I.C. §§ 31-34-25-1, -3.  Mother and R.L. point to the principle of statutory construction that where two statutes dealing with the same subject cannot be harmonized and one is more detailed than the other, the detailed statute will prevail over the less detailed one.  *See Sanders v. State*, 466 N.E.2d 424, 428 (Ind. 1984).  But that tenet applies only when two statutes present an irreconcilable conflict.  *Schrenger v. Caesars Ind.*, 825 N.E.2d 879, 881–82 (Ind. Ct. App. 2005), *trans. denied*.  Multiple statutes relating to the same general subject matter are considered *in*

---

[15] We also note Mother and R.L. did not cite a single constitutional provision in this section of their appellate brief.

*pari materia* and should be construed together to achieve a harmonious result. *Moons v. Keith*, 758 N.E.2d 960, 965 (Ind. Ct. App. 2001)*, trans. denied*. Here, Chapter 31-34-25 and Section 31-32-13-1 both address NCOs but they are not in conflict; one applies after a CHINS adjudication and the other can apply before.

[43] Chapter 31-32-13 is a "broad grant of judicial authority," albeit one that should be applied with restraint and "only after considering not only the best interests of the child but also of the third person subject to the court's order . . . and only when other reasonable alternatives are not available." *W. Clark Cmty. Sch. v. H.L.K.*, 690 N.E.2d 238, 242 (Ind. 1997). If courts did not have this broad authority, they could not act to protect a child from harmful contact at the earliest opportunity even when that would be in the child's best interests. The trial court had authority under Section 31-32-13-1 to issue the NCOs to address the children's safety pre-adjudication.[16]

## The trial court did not err in denying the motion to disqualify DCS' attorney.

[44] Kinder entered an appearance as "next friend" of the Oldest and Middle Children and filed petitions seeking protection orders against R.L. on their

---

[16] Chapter 31-32-13 contains provisions requiring notice, a hearing, a finding of good cause, specificity, and a limited duration. Mother and R.L. do not allege they were not given notice or afforded a hearing, and they do not challenge the trial court's finding of good cause for issuing the NCOs or the content of the orders. Despite claiming the existence of the NCOs created a barrier to reunification, Mother and R.L. did not avail themselves of the multiple opportunities the trial court offered to revisit the NCOs and they did not file objections or move to dismiss the NCOs.

behalf in civil cases separate from the CHINS case.  Mother and R.L. then filed a motion alleging Kinder violated several Rules of Professional Conduct in the protection order cases and should be disqualified from representing DCS in the CHINS cases.  The trial court denied the motion to disqualify.  The trial court's decision is reviewed for an abuse of discretion, which occurs when the decision is clearly against the logic and effect of the facts and circumstances before it. *XYZ, D.O. v. Sykes*, 20 N.E.3d 582, 585 (Ind. Ct. App. 2014).

[45] The Rules of Professional Conduct "have limited application outside of the attorney disciplinary process." *Liggett v. Young*, 877 N.E.2d 178, 182 (Ind. 2007).  The "Scope" of the Rules of Professional Conduct is described, in part, as follows:

> Failure to comply with an obligation or prohibition imposed by a Rule is a basis for invoking the disciplinary process. . . .
>
> [V]iolation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation.  The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies.  They are not designed to be a basis for civil liability[.]  Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons.  The fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule.

Ind. Professional Conduct Rules, Scope [19]–[20].

[46] Still, a trial court "may disqualify an attorney for a violation of the Rules of Professional Conduct that arises from the attorney's representation before the court." *Cincinnati Ins. Co. v. Wills*, 717 N.E.2d 151, 154 (Ind. 1999). A trial court has the power to punish misconduct of attorneys and others to "protect itself against gross violations of decency and decorum." *McQueen v. State*, 396 N.E.2d 903, 904 (Ind. 1979) (quoting *Brown v. Brown*, 4 Ind. 627, 627 (1853)).

[47] The trial court's authority is limited to disqualification for conduct arising from the attorney's representation in the case before the court. *Wills*, 717 N.E.2d at 154. Accordingly, we have held a trial court did not abuse its discretion in denying a motion to disqualify counsel in one case based on alleged violations of the Rules of Professional Conduct in another case that was not before the court and did not arise from counsel's representation in the current case. *Kindred v. Ind. Dep't of Child Servs.*, 136 N.E.3d 284, 292 (Ind. Ct. App. 2019), *trans. denied*. Mother and R.L. argue "DCS Attorney Kinder committed ethical violations by entering appearances as the children's attorney and initiating entirely separate causes of action on their behalf outside of the CHINS case— *not by her conduct within the CHINS case*." *Appellants R.L. & Mother's Reply Br.* at 9 (emphasis added); *see also Appellants R.L. & Mother's Br.* at 12 (stating "[t]he entire contention of this appeal is that Ms. Kinder's representation *of the children* is prohibited by law") (emphasis added).

[48] The trial court here denied the motion to disqualify after considering the merits of Mother and R.L.'s allegations and determining Kinder did not violate any Rules of Professional Conduct. We need not undertake a similar analysis of

Kinder's actions in relation to the Rules to discern whether the trial court abused its discretion because Mother and R.L. concede the alleged violations did not occur in this case. It was not an abuse of discretion for the trial court to deny the motion to disqualify under those circumstances. *See Wills*, 717 N.E.2d at 154. Further, we note Mother and R.L. have not challenged the factual underpinnings of the CHINS adjudications or alleged Kinder's participation in the CHINS proceedings affected the reliability of the CHINS adjudications. Mother and R.L. have failed to demonstrate reversible error.

## Mother and R.L.'s claims are not subject to structural error analysis.

[49] Finally, Mother and R.L. assert, without citation to authority, "[s]tructural error analysis applies to review of Child in Need of Services cases." *Appellants R.L. & Mother's Jt. Br.* at 14. The "structural error" they seem to claim is the trial court and DCS attorney "participating in the protective order case," "along with the trial court's subsequent denial of [their] motion to disqualify" Kinder. *Id.* at 15–16.[17]

[50] Structural errors are "a limited class of fundamental constitutional errors that defy analysis by harmless error standards" and require automatic reversal even without a showing of prejudice. *Durden v. State*, 99 N.E.3d 645, 653 (Ind. 2018) (quoting *Neder v. United States*, 527 U.S. 1, 7 (1999)); *see Johnson v. U.S.*, 520

---

[17] Mother and R.L. briefly mention the trial court's conduct "created the appearance of a biased and partial judicial officer." *Id.* at 15. Mother and R.L. did not raise this below and do not develop a cogent argument about it on appeal. To the extent they intended to make a claim of error on this basis, it is waived. *See* App. R. 46(A)(8)(a).

U.S. 461, 468–69 (1997) (stating the Court has "found structural errors only in a very limited class of cases," including those involving total deprivation of the right to counsel, denial of the right to self-representation at trial, and giving an erroneous reasonable-doubt instruction to the jury). These errors affect "the framework within which the trial proceeds, rather than [being] simply an error in the trial process itself." *Durden*, 99 N.E.3d at 653 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)).

[51] The "purpose of the structural error doctrine is to ensure insistence on certain basic, constitutional guarantees that should define the framework *of any criminal trial*." *Weaver v. Mass.*, 582 U.S. 286, 294–95 (2017) (emphasis added). A structural error "entitles criminal defendants who are convicted to automatic reversal and a new trial." *State ex rel. Allen v. Carroll Cir. Ct.*, 226 N.E.3d 206, 213 (Ind. 2024) (citing *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150–51 (2006)). Mother and R.L. cite their "constitutionally-protected parental rights" as the basis for applying structural error analysis here. *Appellants R.L. & Mother's Jt. Br.* at 16.

[52] Mother and R.L. cite no cases applying structural error in a CHINS setting, or in a civil case more generally.[18] In the absence of persuasive authority or cogent

---

[18] At oral argument, Mother offered *In re G.P.* as a case using language consistent with structural error in reversing a termination of parental rights judgment. *See* 4 N.E.3d 1158, 1167 (Ind. 2014) (stating it was not necessary for mother to show prejudice from the denial of her statutory right to counsel in a CHINS proceeding because "the denial itself was a prejudice requiring a reversal"). Mother and R.L. cited *G.P.* in their appellate brief, but not for this proposition. *See Appellants R.L. & Mother's Jt. Br.* at 14–15. We therefore do not delve further into the specifics of *G.P.*

argument that structural error can exist outside the criminal context, we decline to apply structural error in this CHINS proceeding.

## Conclusion

[53] The trial court did not err in denying O.A.'s motion to dismiss the refiled CHINS petitions because they alleged the updated material facts required. The trial court also did not err in issuing pre-adjudication NCOs under the authority of a statute allowing a court to control the conduct of any person in relation to a child and did not err in denying a motion to disqualify DCS's attorney. Finally, Mother and R.L. offered no authority supporting the use of structural error in a CHINS case. As the parents do not challenge the conduct of the fact-finding or dispositional hearings or the content of the fact-finding or dispositional orders, we affirm the judgment of the trial court that the children are CHINS.

[54] Affirmed.

Altice, C.J., and Weissmann, J., concur.

ATTORNEY FOR APPELLANTS A.A. AND R.L.

Nicole Slivensky
Lawrence County Public Defender Agency
Bedford, Indiana

---

Our research uncovered one memorandum decision in which the father in a termination of parental rights case alleged "the impropriety of the [S]enior [J]udge's appointment presents a structural error" and argued "[a]pplying structural error to a termination case just makes sense given the magnitude of the constitutional rights at stake." *Matter of N.G.*, No. 21A-JT-1844, at *9 (Ind. Ct. App. Feb. 14, 2022), *trans. denied*. The panel deciding the case declined to address the structural error issue because the father had not previously challenged the alleged error. *Id.*

ATTORNEY FOR APPELLANT O.A.

Adam M. Larimer
Lawrence County Public Defender Agency
Bedford, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General


Frances Barrow
Supervising Deputy Attorney General

Samuel Dayton
Deputy Attorney General
Indianapolis, Indiana